# Robinson *v.* Maryland Coal & Coke Co.

### Injury to Miner.

(Decided February 3, 1916. Rehearing denied June 1, 1916.
72 South. 161.)

1. **Master and Servant; Injury to Servant; Safe Place; Escape Way.**—A drift entry of a coal mine used as a place for the track, and as a passage way for the miners in going in and out of mines, and in getting from one room to another, being the only escape way from the mine, was an escape way within the meaning of rule 11, Acts 1911, p. 535, as providing for the protection of conductors of electricity in shafts and slopes used as traveled ways and in escape ways.

[Robinson v. Maryland Coal & Coke Co.]

2. **Same.**—Where a track divided the entry into a coal mine, making the open space to the left of the track the passage or escape way, while the part to the right of the track over which the trolley wire ran, was not used or intended to be used as a part of the passage or escape way, rule 11, Acts 1911, p. 535, was without application to the trolley wire.

3. **Same; Scope of Employment; Place of Work.**—At common law, the operator of a coal mine was not liable to its servant who was killed when he had departed from the place provided for him, and had gone to a place where he had no right to be.

4. **Same; Jury Question.**—Where the evidence was conflicting as to whether or not the trolley wire was located in a passage or escape way, it was a question for the jury whether the mine operator should have protected the trolley wire as required by rule 11, Acts 1911, p. 535.

5. **Same; Invited Licensee; Jury Question.**—The question as to whether decedent was an invited licensee at the point where he was killed, was for the jury where the evidence was conflicting as to whether the trolley wire which shocked and killed him was located in part of a passage or escape way.

6. **Same; Safe Place.**—Regardless of the statute, it was the duty of a mine operator, under the common law to exercise reasonable care to see that the places which its servants were invited to use as a passage or escape way, were reasonably safe.

7. **Same.**—Where an entire entry to a coal mine was used as a passage way or escape way, and the part to the left of the track was not so used exclusively, it was the duty of the company operating the mine under rule 11, Acts 1911, p. 535, to protect the trolley wire running on the ride side of the entry.

8. **Same.**—Under such circumstances the mine operator was liable at common law for a negligent failure to keep the passage way reasonably safe for a miner who was invited to use it as a passage way, whether he was actually engaged in his duties or not at the time he was killed by an electric shock from the trolley wire located therein.

9. **Negligence; Licensee; Invitee.**—A licensee upon the premises of another by invitation, injured at some point where he was neither invited nor expected to be was a bare licensee, and not entitled to protection as an invitee.

10. **Same; Warning.**—Under the evidence in this case, it was a question for the jury whether the decedent was warned of the danger from a dropping or hanging wire at the particular point where he was killed; so also it was a question for the jury whether deceased wore a light when killed.

11. **Same; Plea.**—A plea that at the time he was killed decedent had been visiting about the mine in violation of the company's rules, and was returning to his place of work and came to his death while violating the rule of which he had notice, was not so framed as to authorize the general affirmative charge for defendant.

12. **Mines and Minerals; Rules; Notice.**—Section 37, Acts 1911, p. 514, making a service of a copy of the rule upon a miner conclusive of his acceptance of the contents of the rule, whether he knew them or not, applies only to employees, and cannot be extended to invited licensees, since that class has no contractual relation with the operator of the mine.

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

Action by Mary Robinson, as administratrix, against the Maryland Coal & Coke Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The first and second counts are under the first subdivision of the Employers' Liability Act (Code 1907, § 3910), and allege the defect to be in the trolley wire in that the supports which held the trolley wire in place were broken. The third count alleges a general defect in the ways, works, machinery, etc. The fourth count was based upon the failure negligently to exercise reasonable care to furnish plaintiff's intestate with a reasonable safe place in which to work, and the fifth count is like unto the fourth count, except that it alleges the negligent failure to furnish plaintiff's intestate with a reasonably safe ingress and egress to and from his working place in the mine. The sixth count is based upon the negligent superintendence in that the trolley wire was negligently permitted or allowed to sag and become loose. The seventh count alleges employment under R. G. Bailey that intestate was rightfully upon the premises at the invitation of defendant and engaged in and about the business of defendant, although not in the employment of defendant, and that defendant negligently caused or allowed the trolley wire to be placed or hung so low as to be in a dangerous and unsafe condition, and so as to strike or come in contact with plaintiff's intestate while he was engaged in the performance of his said duties. The eighth count is like the seventh, except that it alleges the wire was charged with electricity, and was negligently allowed to be and remain unshielded and unguarded so that persons coming in contact therewith in said mine would be shocked and injured by the electricity, with which said trolley wire was charged. Count 9 is the same as 7, except that it alleges that defendant negligently caused or allowed said trolley wire to be so highly and dangerously charged with electricity as to shock or kill plaintiff's intestate. Count 10, after alleging the facts as formerly alleged, alleges that in said mine where said intestate was so invited to be, the defendant maintained a trolley wire which was charged with electricity, which said wire was used by defendant in his said mining business, and that it became and was the duty of defendant to use ordinary care to keep and maintain said trolley wire in a reasonably safe position and condition so as not

to kill or injure persons invited by defendant to be in said mine. Plaintiff avers that while her said intestate was in said mine at the place where he had been invited to be as aforesaid on, to-wit, the 26th day of August, 1914, intestate was struck by or came in contact with said trolley wire, whereby he was killed. Plaintiff avers that the death of said intestate was the proximate result of the negligence of defendant in that defendant negligently maintained said trolley wire in a position where same was liable to strike or come in contact with persons in said mine, without having said wire sufficiently shielded or protected, to keep the same from shocking and injuring the persons coming in contact therewith.

The defenses were contributory negligence and certain rules or regulations governing the conduct of the mine; rule 23 as set up in plea 16 being:

"It shall be a violation of the rules of this company for an employee to go visiting about the mines. This applies particularly to miners leaving their place of work and going to the places of other miners."

And defendant says that intestate at the time of his death had been visiting about the mine in violation of said rule, and was then returning to his place of work, and that intestate came to his death while violating said rule.

BONDURANT & SMITH, and LACY & LACY, for appellant. DAVIS & FITE, and BANKHEAD & BANKHEAD, for appellee.

ANDERSON, C. J.—(1-9) The plaintiff's intestate was killed in what was termed "a drift entry" of defendant's mine, which, while used as a place for its car track, was also used as a passageway for the miners in going in and out of the mine and in getting from one room to another, and was the only escape way from said mine. It was therefore such an escape way as is within the contemplation of rule 11 of Acts 1911, p. 535, which said rule is as follows: "Conductors in shafts and slopes used as traveling ways and in escape ways shall be protected."

The evident purpose of this rule is to protect miners from coming in contact with dangerously charged electric conductors in passageways, whether in a slope or shaft, or in any escape way. So the real test in the case at bar must depend on what may be termed the place at which the wire in question was lo-

cated. According to all of the defendant's evidence, and some of the plaintiff's, the wire was located on the right-hand side of the entry, being the gob side, and to the right of defendant's car track and which said track was nearer said gob side, leaving a passageway to the left of said track between it and the miners' rooms. In other words, the track divided the entry; making that portion of same to the left of the track the passage or escape way, while that part to the right of the track was not used or intended to be used as a part of the passage or escape way. If this was true, the rule above quoted did not apply to the wire in question, nor was the defendant liable under the common law to the intestate, who had departed from the place where he had been invited to be and gone across the track to a point where he had no right to be. On the other hand, there was evidence by some of the plaintiff's witnesses from which the jury could infer that the wire was located in a part of the passage or escape way, and it was therefore a question for the jury as to whether or not the defendant should have protected the wire as required by the statute, and also as to whether or not the intestate was an invited licensee at the point where he was killed, and if he was, it was the defendant's duty, under the common law and regardless of the statute, to exercise reasonable care to see that the place where the said intestate was invited to be was reasonably safe. The weight of the evidence showed that the passage, or escape way, was to the left of the track, and that the intestate was killed where he was not invited to be and where he had no right to be, and where he was not in the discharge of any of the duties of his employment. But there was evidence tending to show that the track was so laid, especially when cars were on it, that the miners could not reasonably pass along the left side, but had to cross over the track and proceed along the right side, and that instead of the track being the line of demarcation, the entire entry was used as a passage or escape way. If this was true, the wire should have been protected, under the statute, and the defendant was also liable under the common law for a negligent failure to keep the entry reasonably safe for the intestate, who was invited to use the said passageway, whether he was at the time of his death actually engaged in the duties of his employment or not, as he had a right to rely upon the safety of the only passageway furnished him for use.—*Ala. S. & W. Co. v. Clements*, 146 Ala. 259, 40 South. 971; *Dallas Mfg. Co. v. Townes*, 148 Ala. 146, 41

South. 988; *Tenn. Co. v. Borgess*, 158 Ala. 519, 47 South. 1029. We are, of course, not unmindful of the fact that if a licensee is upon the premises of another by invitation, but is injured at some point where he was neither invited nor expected to be, he is a bare licensee and not entitled to the protection of an invitee; and the cases of *Pioneer Co. v. Talley*, 152 Ala. 162, 43 South. 800, 12 L. R. A. (U. S.) 861; *Geis v. Tenn. Co.*, 143 Ala. 303, 39 South. 301, and *Walker v. So. Ry. Co.*, 169 Ala. 359, 53 South. 994, are in thorough accord with the present holding and are not in conflict with the authorities supra. The *Pioneer Case, supra,* was by a servant against the master, and the action proceeded upon the theory that the plaintiff was an employee of the defendant and was injured while engaged in and about the business of the master, and the proof showed that he left the place of employment and had gone into another entry about his private business. Of course, if he left his own working place and was looking after his private business, he was not in and about the master's business when injured. We do not think, however, that this case precludes this plaintiff from recovering if the intestate was rightfully at the point where he was killed, notwithstanding he was visiting a miner to borrow a tool, for he had to pass through this particular entry in order to get there. We do not think the fact that he went to another room along the entry, which he had to pass through for any purpose, was fatal to a recovery under count 10, as he had a right to be in said entry, unless, of course, the jury believed that the right-hand side, where the wire hung, was no part of the escape or passage way. The case of *Ellsworth v. Metheney*, 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389, quoted from in the *Pioneer Case, supra,* specifically brings out the point that the intestate was on a visit about his own private affairs and was injured "outside the part of the mine in which he was engaged." Indeed, the United States Court of Appeals in this case held that the plaintiff could not recover upon the averment that the intestate was engaged in his duties of employment when killed; but Judge Day, speaking for the court, practically said that there could or should be a recovery upon the theory that the intestate was an invitee in the entry, and whether actually engaged in the discharge of his duty or not, at the time he was killed. If this intestate was killed in the passageway given him it matters not, under count 10, whether he was actually engaged in Bailey's work at the time of his death

or not, and the question again is: Was the wire in the escape or passage way, or was it in a separate and distinct part of the entry which formed no part of an adequate passageway?

In the case of *Geis v. Tenn. Co., supra,* the plaintiff, an employee, voluntarily abandoned the way the master had provided when he could have avoided the obstruction by merely going around the cars within the lighted zone.

The case of *Walker v. So. R. R., supra,* was an action by an employee, and the complaint charged that plaintiff was engaged in the master's business at the time he was injured, and the court held that he was not so engaged, and that there was a fatal variance. Count 10 in the case at bar is by an invitee, and charges that intestate was killed where he had a right to be, and whether he was or was not properly on the gob side of the entry was a question for the jury upon the idea heretofore advanced in this opinion, and we think that the trial court erred in giving the general charge in favor of the defendant as to count 10. Whether or not there was such material variance between the allegations in count 8, that the intestate was in the discharge of his duties of employment when killed, and the proof, as to justify the general charge as to this count, we need not determine, as this case must be reversed for other reasons, and the plaintiff can well abandon this said count 8 upon the next trial as he can get the full benefit of same under count 10. The trial court erred in giving the general charge as to count 10. The trial court also erred in giving, for the defendant, charge 15, as it was a question for the jury, for reasons above advanced, as to whether or not the deefndant should have shielded the wire at the point where the intestate was killed. There was also error in giving charge 16 for the defendant, as applicable to count 10.

(10-11) We do not think that the giving of the general charge as to count 10 can be justified upon the idea that the intestate was, as matter of law, guilty of contributory negligence. Indeed, the trial court evidently did not take this view of the case, or the general charge would have also been given as to counts 7 and 9. In the first place, it was for the jury as to whether or not the intestate was warned as to the danger at the particular point; that is, of the drooping or hanging wire. Bailey claims to have not only warned him to keep a lookout for wires, but at this specific point, and of the danger, but he claims to have done this upon a day previous to his death, as he said he did not see him

[Robinson v. Maryland Coal & Coke Co.]

the day of his death until he was dead. Yet, there was other evidence from which the jury could infer that the intestate never worked in the mine prior to the day of his death. The witness Blankenship testified to warning the intestate, in a general way, to look out for wires, but admitted upon cross-examination that he "did not say anything to him about any part hanging down" as he "thought he could see it." Again it was a question for the jury as to whether or not the intestate was going without a light when he came in contact with the wire. The last seen of him, just before he was killed, he had a lighted lamp on his cap and which was very near a point where he was found dead. It is true that an auger and lamp were found on a car near the body of deceased, but the proof did not show conclusively that it was his lamp. It was cold, and if it had been his it might have been warm, as intestate's lamp was lighted when he was last seen and which could not have been long before his dead body was found, and the lamp was found on the car. Nor was the plea invoking the defendant's rule 23 framed so as to authorize the general charge for the defendant. Plea 16, as last amended, advances rule 23 as a defense and avers that the intestate had notice of same. Blankenship says that the safety man gave the intestate a book of rules the day he was killed, that he "saw it in his possession;" but there is no proof that he was told what it was or that he could or did read the book, or that he had time to do so before getting killed.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

McCLELLAN, SAYRE, and GARDNER, JJ., concur.

### UPON REHEARING.

ANDERSON, C. J.— (12) It is now suggested that section 37 of Acts 1911, p. 514, makes the service of a copy of the rule upon the employee conclusive of his acceptance of the contents thereof whether he knew of the same or not. It is sufficient to say, in response to this contention, that count 10 proceeds upon the theory that the plaintiff was an invited licensee, and not an employee, and section 37 applies to employees, and cannot be extended to a class who had no contractual relation with the operator of the mine.