224 So.2d 908

**WINN–DIXIE, MONTGOMERY, INC.,**
a Corporation

v.

**Holland E. COX.**

6 Div. 611.

Supreme Court of Alabama.

July 3, 1969.

Davies, Williams & Wallace, Birmingham, for appellant.

Hare, Wynn, Newell & Newton, Birmingham, for appellee.

**BLOODWORTH, Justice.**

This appeal is taken by Winn-Dixie, Montgomery, Inc. (defendant below), from a judgment of the circuit court of Jefferson County awarding Holland E. Cox (plaintiff below) $7,500 damages for personal injuries sustained in a fall in Winn-Dixie's retail self-service grocery store, which it operated in Crestline Village, Mountain Brook.

The grocery store building was divided into two areas, the front portion for retail sales and the rear portion for a storage and warehouse area. To enter the rear portion, one must pass through a set of swinging doors. On the front of one of these doors is a sign which reads, "EMPLOYEES ONLY." Located within the storage area are three rest rooms, one for ladies, two for men. The store has 15 to 20 employees.

To reach the rest rooms, there is an aisle between stock shelves of merchandise. In the aisle at the point where a grease trap is located, there is a stairway on one side and stacks of merchandise on the other. The grease trap is centered in the concrete floor in the aisle, and is about 22 inches wide. When not in use, it is covered by a metal lid with a non-skid surface. The width of the aisle between the stairway on one side and the stacks of merchandise on the other side is about four feet.

The grease trap occupies approximately one-half the aisle with about a foot and a half between the edge of the grease trap, on the merchandise side, and about eight inches on the stairway side. It is about four and one-half to five feet deep.

The accident, giving rise to this suit, occurred when Mr. Cox, a 78 year old man, entered Winn-Dixie's store in order to make certain grocery purchases. He selected several items, placing them in a buggy. Then, feeling the need to use the rest room, he proceeded through the swinging doors marked "EMPLOYEES ONLY," and while walking down the aisle toward the rest rooms fell into the grease trap, which was uncovered at the time, its metal lid having been removed by one of the employees while a mop bucket was being drained.

Mr. Cox testified he had shopped in this particular store for a number of years, knew the location of the rest room, and had used it on six or seven other occasions during a ten-year period preceding the accident. He further testified that on the first occasion he had to use it, he had asked permission of a store employee and was told, "Sure. Anytime." He said he had asked permission to use the rest room on two other occasions, but had not asked on the day of the accident.

There are 46 assignments of error, 26 of which are argued in brief. These 26 assignments may be grouped under the following headings:

(1) Assignments of error in refusing the general affirmative charge (1, 4 and 5).

(2) Assignments of error in refusing to give certain written charges to the

jury (7, 10, 11, 12, 13, 14, 15, 18, 19, 21, 22, 23, 25, 26, 28, 29, 30, 31, 33, 34).

(3) Assignments of error in the oral charge to the jury to which exceptions were taken (36, 37, and 39).

Of course, we consider only those assignments which have been substantially argued in brief. Others are deemed waived. Rule 9, Revised Rules of the Supreme Court, 279 Ala. XXI, XXVI; Silavent v. Silavent, 281 Ala. 58, 198 So.2d 785. The assignments argued will be considered in the order in which they appear in brief.

Assignments of error 1, 4 and 5, raise the point that the trial court erred in refusing to give the general affirmative charge as to counts one and four, of the bill of complaint, as amended, the two counts upon which the case was submitted to the jury.

These two counts allege, in substance, that Cox was on Winn-Dixie's premises for the purpose of buying groceries and that a part of the premises consisted of an approach or walkway to a rest room; that, while on the premises as a customer, Cox proceeded to the rest room and fell into the grease trap. Plaintiff Cox alleges that leaving the grease trap uncovered amounted to negligence on the part of Winn-Dixie, and that such negligence was the proximate cause of his injuries.

In complaining of the refusal to give the affirmative charge, Winn-Dixie's argument is that a customer in a retail store who enters a portion of the store not open to the public, and to which the public is not invited, for his own pleasure, convenience or benefit, ceases to be an "invitee" and thereby becomes a "licensee."

Winn-Dixie further contends that Cox testified, with respect to the aisle to the rest room, that the way was dark; that he could not see the floor; that he could not tell if there was any difference in the elevation of the floor; that therefore this case falls within the influence of "step-in-the-dark" cases, and he was thus proceeding at his own risk and was guilty of contributory negligence as a matter of law.

Plaintiff Cox disputes this latter contention. His position is that the aisle was lighted enough for him to see where he was going, and that when he used the word "dark" in his testimony, it related solely to a description of the color of the floor and the grease trap, and not to the condition of lighting. Cox testified that he passed one, perhaps two, drop cord electric lights which were burning as he walked toward the rest room.

█ We agree that the record is sufficient to support the contention of plaintiff that the warehouse portion of the store was not too dark for him to see the floor, and that this case is taken out of the influence of the "step-in-the-dark" cases contended for by defendant.

It is conceded by Winn-Dixie that the rule in Alabama is to the effect that it is the duty of an occupier of premises to use reasonable care and diligence to keep those premises in a reasonably safe condition for those persons who come thereon by invitation, whether express or implied, and if the premises contain any hidden defects or dangers, the invitee must be warned thereof by the occupant. Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388; First National Bank of Mobile v. Ambrose, 270 Ala. 371, 119 So.2d 18. We think there can be no doubt but that plaintiff Cox was an invitee on the premises when he initially entered the store and was engaged in purchasing certain groceries. Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 213 So.2d 211.

The real issue is whether plaintiff retained his status as an "invitee" when he went through the doors marked "EMPLOYEES ONLY" into the rear portion of the store to go to the rest room. If he lost that status, and thus became a mere "licensee" the extent of the store's duty to him was not to wantonly or willfully injure him, nor negligently injure him after discovering he was in danger of being in-

jured. Alabama Baptist Hospital Board v. Carter, 226 Ala. 109, 145 So. 443; Farmers & Merchants' Warehouse Co. v. Perry, 218 Ala. 223, 118 So. 406.

In support of the proposition that plaintiff lost his status as an "invitee" when he left the retail sales portion of the store and entered the warehouse portion, thereby becoming a "licensee," we are cited to Great Atlantic & Pacific Tea Co. v. Popkins, 260 Ala. 97, 69 So.2d 274; and Robinson v. Maryland Coal & Coke Co., 196 Ala. 604, 72 So. 161, which defendant says have application to the case at bar.

In Great Atlantic & Pacific Tea Company v. Popkins, supra, we said, "The conflict is as to the aisle through which she [plaintiff] passed, and whether going through the wrong aisle could have been a proximate cause of her injuries." We reversed for error in refusing to give a written charge requested by defendant to the effect that if Mrs. Popkins went through a checking aisle closed to customers, and sustained her injuries as a proximate consequence thereof, the jury could not find against defendant. We held that it was a jury question whether Mrs. Popkins went through an aisle closed to customers and whether that was a proximate cause of her injuries. We specifically held defendant was not entitled to the general affirmative charge.

In Robinson v. Maryland Coal & Coke Co., supra, we determined that the status of an employee of the coal mine operator (whether "employee" or "invitee") was a question for the jury since the evidence was conflicting as to whether or not a "trolley wire," which killed plaintiff's intestate, was located in a passage or escape way from the mine, in which event the wire should have been protected. We stated that if the decedent was at a place where he was not invited to be, he then changed his status to that of a "licensee," and was not entitled to the protection due an "invitee." We also said that if he was looking after his own private business, then he would not be about his employer's business when he was injured and could thereby be at a place in the coal mine where he was not invited to be.

We are of the opinion that the cases cited do not militate against our conclusion that it was a jury question whether Mr. Cox retained his status as an "invitee" when he entered the warehouse portion of the store. There is evidence in the record that he had been given permission on several separate occasions to use the rest room, and had been told he could use it, "anytime." One of defendant's employees stated he had seen plaintiff, "back there" (referring to the warehouse portion of the store) on another occasion. There was testimony that other customers used the rest room. There was also evidence that Mr. Cox passed two employees of the store on this occasion on the way to the rest room, who neither told him to leave that area nor warned him of the open grease trap.

In McClusky v. Duncan, 216 Ala. 388, 113 So. 250, we held that a customer using a rest room maintained for the accommodation of that business' customers, was an "invitee" to whom was owed the duty to use reasonable care to avoid injuring him.

In Christman v. Segal (1941), 143 Pa. Super. 87, 17 A.2d 676, plaintiff, a customer in defendant's department store, was injured when she fell into a stairway to the basement while following one of defendant's clerks who was directing her to the rest room. The court wrote at page 678:

"In seeking toilet facilities plaintiff was still an invitee and defendant continued to owe her the duty of reasonable care. It is commonly known that lavatory and toilet facilities are available in department stores generally, for the accomodation of patrons, and one using them does not surrender his status as an invitee, for ordinarily, such facilities are as much a part of the premises to which patrons are invited as a floor devoted to the display and sale of merchandise. * * *"

The general rule appears to be, that:

"*A customer or other business visitor of a store or place of business retains the status of an invitee or business visitor while going to, returning from, or making use of, a toilet or rest room which is maintained for the use of customers or other business visitors, or which customers or other business visitors are ordinarily permitted to use, or, it has been held, to which he is directed or permitted to go by a person in authority in response to his request.*" 65 C.J.S. Negligence § 63(132). [Emphasis supplied]

In Dickau v. Rafala (1954), 141 Conn. 121, 104 A.2d 214, plaintiff sustained injuries when she fell down a stairway as she was attempting to locate a toilet which, although it was intended for use of the defendants' grocery store employees, was actually used by customers as well, and which plaintiff was given permission to use. The Connecticut court held that whether the negligence of defendants was the proximate cause of plaintiff's fall and injuries, and whether plaintiff was guilty of contributory negligence, were questions of fact for the judge (in this case sitting without a jury). The court wrote, at page 216, 104 A.2d:

"* * * *Where it is customary for customers or patrons to be free to go to certain parts of the premises, the customer or patron is a business visitor thereon unless the possessor exercises reasonable care to apprise him that the area of invitation is more narrowly restricted. The toilet in the rear of the defendants' store was one which customers were accustomed to use. This made of the toilet an area to which customers were invited. The present case is therefore distinguishable from cases where, in an isolated instance, permission to use a private toilet was extended to an individual customer. * * *"* [Emphasis supplied]

See, also, O'Brien v. Harvard Restaurant & Liquor Co., Inc. (1941), 310 Mass. 491, 38 N.E.2d 658.

While we have been unable to find in our independent research (nor apparently has counsel found) any case "on all fours" with the case at bar, some of the factual situations and holdings in similar cases are of aid to us in reaching our conclusion—that the question of plaintiff Cox's status is a jury question.

In Main v. Lehman (1922), 294 Mo. 579, 243 S.W. 91, it was held that a customer at a store, visiting a toilet therein, which customers were allowed to use, was an invitee, as distinguished from a licensee, to whom therefore the proprietor owed the duty of exercising reasonable care to keep the toilet in a reasonably safe condition for use. The court stated, viz:

"As to the use of toilet by customers defendant's evidence was as follows: Miss Thomas, one of defendant's employees said on cross-examination:

"'Q. This is the toilet the customers use? A. Yes, sir. Q. Provided for them? A. Yes, that is the one we use. Q. You direct the customers? A. No, I never use it; never direct them; seen them come in; never happen to be in there when they would be strangers, just the ones that work in the house. Q. That is the only one provided for the customers? A. It is the only one there. I don't know whether they allow customers or not.'

"Defendant M. H. Lehman, testified on that subject on cross-examination:

"'Q. Is that a ladies' toilet—lady customers? A. It is intended for the employees. Q. And customers when they need it? A. I couldn't tell you, for this reason, no lady would come to me to ask to be directed to the toilet. Q. It is the only one you provide for your customers? A. For our customers? Q. Yes. A. If they use it, they could; I don't send them there. Q. They go

to the ladies there in the store? A. Yes. Q. You would not know to what extent they used it otherwise? A. No, sir.'

\* \* \* \* \* \*

"The first point is whether the plaintiff was an invitee or a mere licensee. The evidence shows she was a customer at defendant's store and that the toilet in question was allowed to be used by defendant's customers as well as by his employees. She was therefore an invitee, and as such the defendant was bound to exercise reasonable care to keep the toilet in a reasonably safe condition for use, and not simply to refrain from willfully or recklessly permitting plaintiff to go into danger on his premises as in the case of a mere licensee. \* \* \* "

In Haley v. Deer, et al. (1938), 135 Neb. 459, 282 N.W. 389, a woman went into a store to use the pay telephone, and while there used the toilet facilities provided for customers. Returning from the toilet, she fell through an unguarded and unlighted trapdoor opening to the basement, and it was held that she was entitled to recover from the proprietor. The Nebraska Supreme Court said in that case:

"The principal argument of the defendant is that plaintiff entered the defendant's place of business solely for her own convenience or benefit, and was a bare licensee, and the defendant owed her no duty except to refrain from wilfully or wantonly inflicting injury upon her, and cites several cases in support of this contention.

\* \* \* \* \* \*

"If one goes into the store of another to use a pay telephone, and while there uses the toilet facilities provided for customers, she has the rights of an invitee, and the owner is liable if he leaves an unguarded, unlighted opening into the cellar which would ordinarily be closed by a trap-door, and the danger of which

opening is well known to the owner but not to the invitee.

\* \* \* \* \* \*

"A customer of a place of business retains the status of an invitee while going to or returning from a toilet maintained for the use of customers."

In Holmes v. Gross (1958), 250 Iowa 238, 93 N.W.2d 714, in an action for injuries to restaurant patron who fell down an unlighted stairway while in search of a rest room, the question of the restaurateur's negligence was held to be properly submitted to the jury. The Iowa Supreme Court said:

"Appellant asserts plaintiff was not an invitee at the time of his injury. Because of the nature of the accident she asserts that when he left the table and proceeded to look for the men's rest room, and by mistake opened the door to the stairway, his status as an invitee ceased.

\* \* \* \* \* \*

"Plaintiff came upon the premises as an invitee. He was a part of the group which came to the dining room of defendant, a public place, and was served his dinner, for which he paid $1.75. It is a question of fact to be submitted to the jury as to whether or not under the circumstances he continued to be an invitee. \* \* \* "

Plaintiff Cox argues that there was ample and credible evidence from which the jury could have inferred that the rest room facilities located on the premises were either regularly maintained for the use of Winn-Dixie's customers or customarily used by its patrons. We set out some of this evidence.

Plaintiff *Holland E. Cox* testified as follows:

"Q. All right, sir. Now, when you went there on the day that this accident occurred, was there any store employee inside the warehouse area on that occasion?

"A. About where you are pointing there, there were two employees.

"Q. All right. Did you speak to them as you went in?

"A. Yes.

"Q. All right. Did either of them ask you where you were going or tell you not to use the rest room?

"A. No. they did not.

*    *    *    *    *    *

"Q. All right, sir. Now, when you went in there and you saw these two employees here, I believe you said you spoke to them or something. Did they say, 'Watch out. There is a cover off this hole down there,' or give you a warning, such a warning as that in that store?

"A. They did not.

"Q. Had you ever been in that store and used that toilet on any other occasion when that hole did not have a cover over it?

"A. I didn't know there was a hole there.

"Q. Every time that you had walked there then, I assume from what you said, there had been solid footing all the way?

"A. Yes.

"Q. Now, the number of times that you have used that, however many number it was, would from time to time, would you see other customers using that toilet, and you would wait for them or they would wait for you?

"A. Well, I have.

"Q. Did you ever try to make any estimate of how many times that happened?

"A. No."

*James Henry Kent* testified as follows:

"Q. Back in March, 1966, where were you working?

"A. Crestline Hill's.

*    *    *    *    *    *

"Q. What was your capacity there?

"A. Third man or head stock man.

*    *    *    *    *    *

"Q. Have you ever seen Mr. Cox use this rest room before?

"A. I have seen him back there. I have never seen him go use it.

*    *    *    *    *    *

"Q. All right, sir. When you saw him back there in the stockroom, you knew he wasn't buying any goods, because you don't sell goods?

"A. You mean when he was coming back out or what?

"Q. When you saw him coming from the rest room.

"A. I figured that he had gone to the rest room or was going to the rest room.

"Q. That is what I say. That was your best judgment, that he had used the rest room?

"A. Yes, sir.

"Q. And at no time did you say, 'Mr. Cox, we would appreciate it if you wouldn't use our rest room.' You didn't tell him that, did you?

*    *    *    *    *    *

"A. No, sir. I didn't.

"Q. All right, sir. Now, Mr. Kent, there never was anything on the toilet door or rest room itself that said, 'For Employees Only and Nobody Else's Use.' There were never any instructions like that?

"A. Men.

"Q. Was it just men?

"A. Yes, sir."

* * * * * *

On re-direct examination, Mr. Kent testified as follows:

"Q. (BY MR. WALLACE:) In other customers using this rest room, have they ever asked permission to use it?

"A. Yes, sir. On occasion they have, yes, sir.

"Q. Do you see people go back there occasionally with children?

"A. Yes, sir. Several. More than anything else, it would be kids, mothers taking their kids back there, you know."

*Wayne Mays* testified as follows:

"Q. What is your job?

"A. Meat cutter.

* * * * * *

"Q. Do any customers ever ask you for the use of the rest room?

"A. On occasion, yes, sir.

"Q. And do you ever permit them to use it from time to time?

"A. Yes, sir.

"Q. Have you ever seen anybody go back there that you know of, a customer, without permission that you know of?

"A. Without permission?

"Q. Yes.

"A. I don't know whether they have permission or not.

* * * * * *

"Q. You don't mean to say that one time I come in there and use the rest room and the next time I couldn't come in there and use the rest room without asking permission, are you? You are not saying that, are you?

"A. No, sir.

* * * * * *

"Q. Have you had anybody else to fall into it [grease trap]?

"A. We had one.

"Q. One other boy had fallen into it. You are familiar with the fact now that two people have fallen in it, right?

"A. It was a boy that worked there.

"Q. Yes, sir. One boy that you all heard about, and you all know it is a dangerous place?

"MR. WALLACE: We object to that.

"THE COURT: Sustained."

*Joe McClain* testified as follows:

"Q. How long have you been manager of the store?

"A. Since 1960.

* * * * * *

"Q. From time to time, have you noticed customers use the rest room?

"A. I have seen customers use the rest room, yes, sir.

"Q. What in general were the type of people that went there?

"A. Most of the time it is people with children that use it."

Procedurely, the question is, Whether under the evidence in the record plaintiff made out a case to the jury, or whether the court (as a matter of law) had the duty to direct a verdict for the defendant?

A reading of the record leads us to conclude that there is sufficient evidence, and reasonable inferences arising therefrom, to make it a jury question as to whether the rest room was either maintained for the use of Winn-Dixie's customers, or they were ordinarily permitted to use it, even though it may not have been primarily so intended and notwithstanding the sign on the door.

To briefly summarize, the plaintiff, then 78 years old, was a regular customer of defendant, being in the store on this occasion specifically engaged in making purchases— clearly an invitee. He had used the rest room on numbers of previous occasions, asking permission the first time, as he logically answers, "Because I didn't know

where it was" and being told that he might use it "anytime." No directions were necessary on this occasion. He knew the route and he was observed by other employees going to and from the rest room—on this and other occasions. He passed by other employees as he was going to the rest room. He was never asked to leave the storeroom area, nor not to use the rest room. He observed (and employees observed) others use the rest room. There was no sign on the rest room door restricting use to employees, only signs "Men" and "Ladies." No one was ever denied the use of the rest room.

■ From the evidence the jury could conclude plaintiff's invitation to shop on the premises also extended to the rest room. The strongest physical evidence to the contrary would appear to be the sign "EMPLOYEES ONLY" on the swinging doors leading from the front of the store to the storage area. Perhaps (to the jury), a reasonable inference from the evidence was that the sign referred only to the storeroom part of the premises, not to the aisle nor the rest room itself, in view of the abundant evidence that customers of defendant were ordinarily permitted to use the bathroom.

The rule is well-established that in a case involving disputed facts, the question as to whether or not plaintiff was an "invitee" at the time and place of his injury is a question for the jury to decide. Alabama Clay Products Co. v. Mathews, 220 Ala. 549, 126 So. 869.

As we have already concluded, we think the question of whether plaintiff retained his status as an "invitee" when he entered the warehouse portion of the store was a matter which properly addressed itself to the jury.

With respect to the exceptions taken to the oral charge of the court (i.e., the court's definition of contributory negligence and reference to loss of earnings or damages), we are of the opinion there is no reversible error here.

We do not understand the oral charge of the court as having the effect of compelling the jury to the belief that contributory negligence has to be the "sole" proximate cause of the injury as defendant Winn-Dixie contends. The oral charge and the written charges given for defendant (which we see no need to incorporate here) fairly, adequately and correctly, in our view, covered the subject and stated the rule—that contributory negligence is a valid defense when it constitutes "a" proximate cause.

■ With reference to defendant's refused charge on loss of earnings (assignment of error 7), since it did not argue the excessiveness of the verdict, there can be no injury to it in the refusal of such a charge (whether erroneous or not). Lehigh Portland Cement Co. v. Higginbotham, 232 Ala. 235, 167 So. 259. However we consider this issue to have been properly submitted to the jury.

We have carefully studied and considered each argument advanced by Winn-Dixie with respect to its claim of reversible error in the refusing of a number of its written charges. We have also read and re-read the very thorough charge of the trial court, and each charge given at defendant's request.

We have concluded that the court below was correct in refusing each charge either because the charge was covered by other given charges or the oral charge of the court, or because the charge was bad in form, argumentative, an incorrect statement of the law, or misleading. It would unduly burden and lengthen this opinion to set out each charge verbatim and our conclusion thereon.

The judgment of the trial court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.