479 S.E.2d 62

**Ernie HOOVER, Appellant,**

v.

**Edna BROOME, d/b/a Broome's Service Center, Respondent.**

No. 2583.

Court of Appeals of South Carolina.

Heard Oct. 10, 1996.

Decided Oct. 28, 1996.

Rehearing Denied Dec. 31, 1996.

532

Stanley G. Jackson, Aiken, for appellant.

Lewis C. Lanier, of Horger, Horger & Lanier, Orangeburg, for respondent.

GOOLSBY, Judge:

In this premises liability action, Ernie Hoover sued Edna Broome, doing business as Broome's Service Center, alleging he was injured as a result of Broome's negligence, wantonness, willfulness, and recklessness in failing to warn or give notice of the imminent danger presented by an unguarded grease pit. The trial court refused to charge the jury the law of the invitee, finding as a matter of law that Hoover was a licensee. The trial court also denied Hoover's motion for a directed verdict regarding Broome's liability for Hoover's accident. Finding no negligence, the jury returned a verdict for Broome. This appeal follows. We reverse the trial court's decision and remand for a new trial.

## *Facts*

On Saturday afternoon, September 25, 1993, Ernie Hoover, his son Jason, and a third passenger were attempting to find the location of an automobile repairman on Beech Island who was repairing Hoover's jeep. After spotting a large sign advertising Broome's Service Center, Hoover decided to stop there and ask directions. Noticing an open sign in the front window, Hoover went into the front office and asked the lady in attendance, Ms. Knofpe, for directions. Broome's employees, however, testified they believed the sign stated "closed" because the station was closed for repairs. It is uncontroverted that Knofpe told Hoover she did not know the area and would find a manager to help him.

Alfred Davis, the manager-in-training, met Hoover in the office and followed him to his truck to look at Hoover's map. There is conflicting testimony as to what happened next. According to the testimony of both Hoover and his son, Davis invited Hoover to follow him into the garage because someone inside might know the location. Hoover followed Davis inside as instructed. Davis, however, testified he went inside the

garage to find out the directions and, unbeknownst to him, Hoover followed him inside.

Shortly after entering the garage, Hoover fell approximately four and a half feet into a grease pit. All parties agree it was difficult for Hoover to see when he first entered the dark garage because it was bright and sunny outside and his eyes needed time to adjust to the new lighting. Davis walked across the grease pit in the service area in a place where the pit was boarded over. Hoover testified he was trying to follow Davis when Spires Broome greeted him and began talking to him. Before Hoover knew what was happening, he fell into a portion of the grease pit not covered by boards. According to Hoover, Broome yelled "watch out" as he was falling. Broome, however, testified that he yelled "watch out" twice immediately before Hoover fell. Although Hoover and Broome spoke for a few moments before Hoover fell, all parties agree that neither Davis nor Broome warned Hoover about the grease pit when he first entered the garage.

Several of Broome's employees testified that there was a sign by the entrance to the garage warning customers not to enter the garage without a service representative escort. Hoover testified he never saw a warning sign. It is uncontroverted that one of the employees had taken down the yellow safety chain and warning sign normally across the garage entrance in order to back his truck partially into the pit area. An employee had also removed several of the boards covering the pit area. The pit, however, was outlined by bright yellow paint.

As a result of the fall, Hoover sustained injuries to his right arm, both knees and hips and compressed his spine. He underwent surgery on his left knee, two operations on his right shoulder, and rehabilitative physical therapy. His treating physician testified the fall left Hoover with a thirty percent permanent disability.

### *Discussion*

#### I.

Hoover first argues the trial court erred in determining as a matter of law Hoover was a licensee when he fell into the grease pit. Hoover asserts the judge should have also charged the jury with the law regarding the duty owed to an

invitee because it was a question of fact for the jury to determine whether Hoover was an invitee or a licensee at the time of his fall. Hoover asserts there was sufficient evidence for the jury to infer he was either expressly or impliedly invited onto the premises. We agree.

Broome's duty to protect Hoover from conditions on the property largely depends on whether Hoover was an adult trespasser, a licensee, or an invitee at the time of the accident. *See Landry v. Hilton Head Plantation Prop. Owners Ass'n.,* 317 S.C. 200, 452 S.E.2d 619 (Ct.App.1994). Because trespass is not an issue before this court, we must determine whether there were sufficient indicia of evidence for the judge to charge the jury with the law of both a licensee and an invitee.

■■ A licensee is a social guest or "a person who is privileged to enter upon land by virtue of the possessor's consent." *Neil v. Byrum,* 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986). When a licensee enters onto the property of another, the primary benefit is to the licensee, not the property owner. *Landry,* 317 S.C. at 203, 452 S.E.2d at 621.

■■ An invitee, on the other hand, is a person who enters onto the property of another at the express or implied invitation of the property owner. *Parker v. Stevenson Oil Co.,* 245 S.C. 275, 140 S.E.2d 177 (1965); *Landry,* 317 S.C. at 203, 452 S.E.2d at 621. A customer of a store is classified as an invitee. *Shipes v. Piggly Wiggly St. Andrews, Inc.,* 269 S.C. 479, 238 S.E.2d 167 (1977); F. Patrick Hubbard & Robert L. Felix, THE SOUTH CAROLINA LAW OF TORTS 79 (1990). Business visitors are considered invitees as long as their purpose for entering the property is either directly or indirectly connected with the purpose for which the property owner uses the land. 62 AM.JUR.2d. *Premises Liability* § 88 (1990).

■ The trial court noted *Parker* when it declined to charge the jury the duty of care owed to an invitee. In *Parker,* a teenager fell into a grease pit when he went to the service station after hours to use the bathroom and get a drink from the vending machine. *Parker,* 245 S.C. at 281, 140 S.E.2d at 178–79. The trial court determined Hoover's situation is distinguishable the incident in *Parker* because Hoover did not go to the service station for the purpose of using the bathroom or vending machines.

We do not agree, however, with the trial court's narrow interpretation of *Parker*. In determining Parker was an invitee, the supreme court compared the gas station owner to a conventional storekeeper who invites prospective customers onto the property. *Id.* When Parker entered the gas station property to use the bathroom, he became a potential customer. Applying this principle here, the trial court's interpretation is not the only reasonable inference.

The Restatement defines an invitee as either a public invitee or a business invitee:

A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. . . . A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

RESTATEMENT (SECOND) OF TORTS § 332 (1981). One possible interpretation of the evidence is that Hoover was a public invitee. People stop at service stations for a variety of reasons such as to use the bathroom, to find a pay phone, to buy snacks, or even to ask directions. Hoover testified that he stopped at Broome's Service Center because he saw their advertisement. Broome advertised on the roadways to encourage people to stop by the station. Their service center, therefore, is open to the general public.[1] The fact that Broome did not receive an economic benefit from Hoover's visit does not automatically relieve Broome from the duty to take reasonable care to protect members of the public from dangerous conditions. *See* 62 AM.JUR.2d. *Premises Liability* § 92, at 448 (1990).

Furthermore, when Hoover first entered the office to ask directions, the office personnel went to find a manager to help Hoover rather than turning Hoover away. As the Restatement notes, "[a]ny words or conduct of the possessor which lead or encourage the visitor to believe that his entrance is desired may be sufficient for the invitation." RESTATE-

---

1. The Restatement also points out the fact a building used as a shop gives the public reason to assume the owner will permit their entrance, not only to buy items, but also to look around or even to simply pass through the shop. RESTATEMENT (SECOND) OF TORTS § 332, cmt. c.

MENT (SECOND) TORTS § 332, cmt. b (1981). The jury should have been allowed to find as a fact whether the evidence suggested Broome's Service Center invited the general public to its property in order to encourage business.

In *Swartz v. Sears, Roebuck, and Co.*, 264 Ill.App.3d 254, 201 Ill.Dec. 210, 636 N.E.2d 642 (1993), the Illinois Court of Appeals determined the trial court erred in finding the customer of an auto shop in Sears was an invitee as a matter of law under Illinois common law. *Id.*, 201 Ill.Dec. at 219–220, 636 N.E.2d at 651–652. A potential customer slipped and fell on a puddle of water and oil after she entered the auto shop through the vehicle entrance used by employees only because a trailer was blocking the customer entrance. *Id.* at 212–13, 636 N.E.2d at 644–45. There was a question whether there was an invitation, either express or implied, for the potential customer to enter the auto shop through the vehicle door instead of the customer door. *Id.* at 220, 636 N.E.2d at 652. The court found the customer's status as an invitee or a licensee was based on a factual determination of conflicting inferences which is normally a question for the jury and, thus, the trial court should have charged the jury with both standards. *Id.* at 220–21, 636 N.E.2d at 652–53; *see also Winn–Dixie, Montgomery, Inc. v. Cox*, 284 Ala. 362, 224 So.2d 908 (1969) (where a customer fell when he went into a rest room in the warehouse part of the building marked "employees only," it was a question for the jury to determine whether or not the customer was an invitee at the time and place of his injury).

Similarly, Hoover's status is completely based on a factual determination of his status at the time he actually fell into the grease pit. There is sufficient evidence for the jury to infer that an employee of Broome's Service Center expressly invited Hoover into the garage area.[2] Hoover and his son Jason both testified that Davis, the manager-in-training, instructed Hoover to follow him into the garage service area where someone else might be able to give Hoover directions. Although this testimony was contradicted by Davis, the jury should have been given the opportunity to review the credibility of the

---

2. "An express invitation to enter a premises occurs when the owner, in terms, invites another to come upon the premises or to make use of them or to do something thereon." 62 AM.JUR.2d *Premises Liability* § 94, at 451 (1990).

witnesses and determine whether or not Davis gave Hoover an express invitation to enter the service area. The trial court, therefore, should have charged the jury with the law regarding both licensees and invitees because Hoover's status at the time of the injury was a question of fact for the jury.

## II.

Hoover also argues the trial court erred in denying his motion for a directed verdict on the question of whether or not Broome was liable for Hoover's accident. We disagree.

In deciding a motion for a directed verdict, the trial court must view the evidence and all reasonable inferences in the light most favorable to the party opposing the motion. *Dalon v. Golden Lanes, Inc.,* 320 S.C. 534, 466 S.E.2d 368 (Ct.App. 1996). In ruling on a motion for a directed verdict, the court is only concerned with the existence or non-existence of evidence and does not have the authority to decide credibility issues nor to resolve conflicts in testimony. *Garrett v. Locke,* 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992). The trial court should deny a motion for directed verdict if the evidence presents more than one reasonable inference or if its inferences are in doubt. *Smith v. Wal–Mart Stores, Inc.,* 314 S.C. 248, 442 S.E.2d 606 (1994).

Hoover asserts whether he was a licensee or an invitee at the time of the accident, Broome's Service Center minimally had a duty to warn him of hidden dangerous conditions like a grease pit. *See Neil,* 288 S.C. at 474, 343 S.E.2d at 617. (a landlord owes a licensee a duty to use reasonable care to discover the licensee and to warn the licensee of any hidden dangerous conditions). Broome points out even if Hoover was granted the higher standard of an invitee, he was not liable to an invitee for conditions on the land whose danger was obvious. *See Callander v. Charleston Doughnut Corp.,* 305 S.C. 123, 406 S.E.2d 361 (1991). We must, therefore, determine whether there is any evidence which infers Broome was not negligent and the trial court correctly denied Hoover's motion for a directed verdict.

The trial court was required to deny Hoover's motion for a directed verdict if there were conflicts in the testimony regarding the evidence needed to determine the issue of liability. *See Crane v. Caldwell,* 113 N.C.App. 362, 438 S.E.2d

449 (1994) (reversing a directed verdict for the premises owner finding issues arising in negligence cases are not ordinarily susceptible for summary disposition because the jury must determine the appropriate standard of care). First, Davis, the manager-in-training, disputes the testimony of Hoover and his son that Davis told Hoover to follow him into the garage service area. In fact, Davis testified he asked Hoover to wait by his truck. Second, there are many disputes concerning the notice issue including whether a warning sign was posted outside the garage entrance and whether Spires Broome shouted "watch out" three times before Hoover fell into the pit. Third, the parties disagree as to the length of time Hoover spent in the garage prior to his fall. Hoover may have been in the garage long enough to notice the pit if he simply exercised ordinary care in watching where he was walking. Finally, there is also conflicting testimony as to whether or not the grease pit was guarded because a truck blocked the front of the pit, a chain was across the back end, and bright yellow warning stripes marked the sides of the pit.

The trial court, therefore, correctly allowed the jury to decide these factual issues. Viewing this conflicting testimony in the light most favorable to Broome, it is evident that reasonable minds could infer Broome was not liable for Hoover's accident.

**REVERSED AND REMANDED.**

CURETON and ANDERSON, JJ., concur.