494 S.E.2d 827

Alphonso GOODE, Appellant,

v.

ST. STEPHENS UNITED METHODIST CHURCH, d/b/a St. Stephens Apartments, Mack Gibson, Kevin Purnell, Darren Boatwright, Edward Rose, Insignia Financial Group, and Donald E. Bowen, Defendants,

of whom St. Stephens United Methodist Church, d/b/a St. Stephens Apartments, Mack Gibson, Insignia Financial Group, and Donald E. Bowen, Jr., Personal Representative of the Estate of Donald E. Bowen, Deceased, are Respondents.

No. 2750.

Court of Appeals of South Carolina.

Submitted Nov. 4, 1997.

Decided Nov. 17, 1997.

Rehearing Denied Jan. 22, 1998.

434

436

William P. Hatfield and Gary I. Finklea, both of The Hyman Law Firm, Florence, for Appellant.

Thomas C. Cofield and Andrew E. Haselden, both of Barnes, Alford, Stork & Johnson, Columbia, for Respondents.

ANDERSON, Judge:

Alphonso Goode filed a complaint against St. Stephens United Methodist Church, d/b/a St. Stephens Apartments, Insignia Financial Group, Donald Bowen and Mack Gibson (collectively called "St. Stephens") for injuries he sustained when he was attacked on the grounds of the St. Stephens Apartments. The trial judge granted St. Stephens's motion for summary judgment, finding St. Stephens had no duty to protect a visitor to the apartment complex from the criminal acts of third parties. Goode appeals.[1] We affirm.[2]

---

1. Defendants Kevin Purnell, Darren Boatwright and Edward Rose, Goode's attackers, failed to answer the complaint and were held in default. They are not parties in this appeal.

2. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTUAL/PROCEDURAL BACKGROUND

On May 12, 1993, Alphonso Goode was giving his cousin a ride home when they encountered Defendant Edward Rose. Rose and Goode's cousin got into a fight; Goode and his cousin then left. Later that evening, around 9:00 p.m., Goode went to the St. Stephens Apartments to visit a friend, Georgia German. While there, Goode was attacked and severely beaten on the grounds of the apartment complex by Defendants Rose, Kevin Purnell, and Darren Boatwright. Boatwright lived at St. Stephens Apartments with his mother. Purnell and Rose were not tenants at St. Stephens, nor was Goode.

St. Stephens is a federally subsidized apartment complex, commonly known as Section 8 housing. At the time of the incident, St. Stephens Apartments was owned by Donald E. Bowen, and managed by Insignia Financial Group through its property manager, Mack Gibson. Goode brought this action alleging that the St. Stephens defendants were negligent in failing to provide security at the apartment complex. St. Stephens moved for summary judgment on the ground that under South Carolina law there was no duty on the part of St. Stephens to protect Goode from the criminal acts of third parties.

Several depositions and affidavits were submitted for the hearing on the motion for summary judgment. Mack Gibson, the property manager for St. Stephens at the time of the attack, testified in his deposition that, in accordance with posted guidelines for accepting new tenants, he did background checks, credit checks, home visits, and income verifications for all residents over the age of eighteen. The lease prohibited criminal activity on or near the property by tenants and their guests. Gibson stated when criminal activity occurred, he could initiate proceedings for eviction of the tenant even before the person was convicted. However, no one was evicted from St. Stephens for criminal activity during Gibson's tenure as property manager.

Gibson stated the apartment complex provided security to the tenants by repairing locks as quickly as possible, securing windows, and informing the residents in a newsletter about criminal activity occurring within the complex. The newsletter was posted in the office and in the laundry room and was

taken to each of the apartments. Gibson also routinely inspected the property. Gibson asserted he was unaware of the fight between Goode and Defendants Rose, Purnell, and Boatwright until he received a letter from Goode's attorney.

Macio Williamson, a former manager who worked at St. Stephens for thirteen years beginning in 1973, provided an affidavit stating he had been aware of criminal activity at the complex. He said he considered it his duty to patrol the complex and that the tenants relied upon him to provide the additional security.

In his deposition, Goode described the neighborhood surrounding St. Stephens as "[r]ough. It's like a jungle." He admitted he knew there was no security on the grounds of St. Stephens at the time of the incident. Goode also stated he had witnessed Defendant Boatwright in several fights with other people at the complex.

Helena Purnell, Goode's mother, stated by affidavit that she and Goode lived at St. Stephens from 1979 to 1988, when she moved out due to "the increased criminal activity and poor management of the complex." Purnell said it was her "impression the management owed a duty to the tenants to provide adequate security and maintain the complex in a safe condition." Purnell stated she saw the manager of the complex patrol the grounds on several occasions.

Georgia German, the person Goode was planning to visit the night he was attacked, stated in her affidavit that she understood, pursuant to the lease, St. Stephens had a duty to prevent criminal activity from occurring on the premises, especially criminal activity instigated by residents. German believed the apartment complex assumed the responsibility for policing the area to keep criminal activity from occurring. Similarly, Elizabeth Smith, who was also a tenant at the time of the attack, stated in her affidavit that she believed the lease required the management at St. Stephens to provide a safe environment free of criminal activity. Smith stated she and her family "relied on the management to perform some type of security and protection."

The trial judge granted summary judgment in favor of St. Stephens, finding under South Carolina law St. Stephens had

no duty to protect Goode from the intentional attacks of third parties. Goode appeals.

## STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Baugus v. Wessinger*, 303 S.C. 412, 401 S.E.2d 169 (1991). *See also Wilson v. Moseley*, 327 S.C. 144, 146, 488 S.E.2d 862, 863 (1997) (the evidence and the inferences therefrom should be viewed in the light most favorable to the non-moving party). "Summary judgment is proper where plain, palpable, and indisputable facts exist on which reasonable minds cannot differ." *Rothrock v. Copeland*, 305 S.C. 402, 405, 409 S.E.2d 366, 368 (1991).

## LAW/ANALYSIS

Goode argues under a negligence theory that St. Stephens owed him a duty to warn, prevent, or protect him from the tortious activity of a tenant and his guests. He bases this duty on (1) his alleged status as an invitee under the common law; (2) St. Stephens's undertaking to render security services; (3) provisions in the lease; and (4) federal regulations and directives and handbooks promulgated thereunder.

1. Status as Invitee v. Licensee

Although St. Stephens conceded during the hearing that Goode was an invitee for purposes of the motion for summary judgment, the trial court found there was no evidence in the record supporting his status as an invitee; instead, the trial court found he was a licensee. Goode offers as evidence of his status as an invitee (1) the deposition of property manager Mack Gibson, in which Gibson stated that tenants were allowed to have guests; (2) the affidavit of Georgia German, in which she stated Goode was invited to visit her at the apartment complex on the night of the attack; and (3) the affidavit of Goode's mother, Helena Purnell, in which she stated Goode

had a standing invitation to visit friends such as Georgia German at the complex. Purnell noted that she and Goode previously lived at St. Stephens and that Goode frequently returned to see his friends.

 "A licensee is a social guest or 'a person who is privileged to enter upon land by virtue of the possessor's consent.'" *Hoover v. Broome,* 324 S.C. 531, 535, 479 S.E.2d 62, 64 (Ct.App.1996) (quoting *Neil v. Byrum,* 288 S.C. 472, 343 S.E.2d 615 (1986)), *cert. dismissed* (June 2, 1997). A licensee's presence on the property is for the primary benefit of the licensee, not the owner. *Id.* at 535, 479 S.E.2d at 64. On the other hand, an invitee is a person who enters onto the property of another at the express or implied invitation of the property owner. *Id.* A public invitee is one who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open to the public. A business visitor is an invitee whose purpose for being on the property is directly or indirectly connected with business dealings with the owner. *Id.* at 536, 479 S.E.2d at 65 (citing Restatement (Second) of Torts § 332 (1981)). *See also Parker v. Stevenson Oil Co.,* 245 S.C. 275, 140 S.E.2d 177 (1965) (the term "invitee" in premises liability cases means the same thing as a business visitor and refers to one who enters upon the premises of another at the express or implied invitation of the occupant, especially when he is there about a matter of mutual interest or advantage).

 Goode was not a public invitee because an apartment complex is not a place held open to the public and is instead a private place for only people who are specifically invited. *See Cramer v. Balcor Property Mngt., Inc.,* 312 S.C. 440, 443, 441 S.E.2d 317, 318 (1994) ("An apartment building is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create. It is of its nature private and only for those specifically invited.") (quoting *Cooke v. Allstate Mngt. Corp.,* 741 F.Supp. 1205 (D.S.C.1990)). In addition, Goode was not a business invitee because he was not at the complex for a reason directly or indirectly connected with business dealings of the owner. Goode was not at the apartment complex as a prospective tenant. Instead, he was there to visit a friend when the attack

occurred. Goode was simply a social guest of a tenant at the complex, and was no more than a licensee.

■ Moreover, in *Cramer*, the South Carolina Supreme Court, on a certified question from the federal district court, stated landlords do not owe a duty to protect tenants from criminal activity merely by reason of the landlord/tenant relationship. The court explained:

Tenants in a huge apartment complex, or a tenant on the second floor of a house converted to an apartment, do not live where the world is invited to come. Absent agreement, the landlord cannot be expected to protect them against the wiles of felonry any more than the society can always protect them upon the common streets and highways leading to their residence or indeed in their home itself.

*Cramer*, 312 S.C. at 443, 441 S.E.2d at 318 (quoting *Cooke*, 741 F.Supp. 1205).

Goode attempts to distinguish *Cramer* from the facts of this case. In *Cramer*, a tenant was killed in her apartment by an unknown assailant. Goode asserts his case is different because he was attacked by a tenant in a common area rather than inside an apartment. The *Cramer* court specifically held that "[u]nder South Carolina law a landlord does not owe a duty to a tenant to provide security *in and around a leased premises* to protect the tenant from criminal activity of third parties." *Id.* at 444, 441 S.E.2d at 319 (emphasis added). The court's holding clearly imposes no duty to provide security in apartments or common areas. In addition, in finding that the landlord owes no duty to protect tenants from the criminal acts of third parties, the court did not distinguish between known and unknown assailants. The court noted in *Cramer* that a duty may arise under the particular circumstances of the individual case upon a showing of negligence constituting the proximate cause of the loss. *Id.* at 443 n. 1, 441 S.E.2d at 319 n. 1. However, without special circumstances that would create a duty to protect a tenant or guest from attack from a particular tenant, the attacker's status as a tenant does not in itself create such a duty.

Goode also contends *Cramer* is inapplicable because the case is limited to situations involving a landlord/tenant relationship and not owner/invitee. The court found a fundamen-

tal distinction between the relationships of landlord/tenant and owner/invitee. *Id.* at 442–43, 441 S.E.2d at 318. The court declined to impose a duty on the landlord to protect tenants from criminal activity merely because of the relationship. We think it would be absurd to find a landlord owes a higher duty of care to the guests of tenants than to the tenants themselves.[3]

Finally, Goode attempts to distinguish *Cramer* because he is not relying on the South Carolina Residential Landlord Tenant Act to create the duty of care owed to him. The Supreme Court explicitly stated, "Neither *common law* nor the South Carolina Residential Landlord–Tenant Act imposes a duty on a landlord to provide protection to tenants against criminal activity of third parties." *Id.* at 444, 441 S.E.2d at 319 (emphasis added). Therefore, Goode's argument is clearly without merit.

█ Even if Goode were a business invitee at the time of the incident, St. Stephens would not be liable for his injuries. A business owner has a duty to take reasonable care to protect invitees. However, this duty does not extend to protection from criminal attacks from third parties unless the business owner knew or had reason to know the criminal attack would occur. *Bullard v. Ehrhardt*, 283 S.C. 557, 324 S.E.2d 61 (1984). In *Callen v. Cale Yarborough Enterprises*, 314 S.C. 204, 442 S.E.2d 216 (Ct.App.1994), *cert. denied* (Oct. 20, 1994), this Court found a Hardee's restaurant was not liable for injuries an invitee suffered as a result of a fight in the drive-through service lane of the restaurant. Although Hardee's knew other violent incidents had occurred at the location over the past several years, there was no previous incident that night to put Hardee's on notice of any problems. Thus, there was no evidence Hardee's knew or had reason to know a fight was occurring or about to occur. *Id.* at 206, 442 S.E.2d at 218.

█ In this case, both Goode and his mother stated they knew of criminal activity that had occurred at St. Stephens in the past, including an alleged shooting. In addition, Goode

---

**3.** The Latin phrase *"reductio ad absurdum"* [leading to absurd consequences] is efficacious. *See* Black's Law Dictionary 1279 (6th ed. 1990).

asserted he knew Darren Boatwright was a violent person and that he had seen Boatwright involved in other fights at the complex. However, there is no evidence in the record that St. Stephens was aware of Boatwright's previous fights or of any incident that day that would put management on notice the attack on Goode by Boatwright and the others might occur. Therefore, St. Stephens had no duty to protect Goode from the intentional attack even if he were an invitee.

### 2. Duty Created by Undertaking

Goode also argues St. Stephens created a duty to protect him from the violent acts of third parties by undertaking to provide security to tenants and their guests.

Under the common law, even where there is no duty to act but the defendant voluntarily undertakes the act, the defendant assumes a duty to use due care. *Russell v. City of Columbia,* 305 S.C. 86, 406 S.E.2d 338 (1991); *Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148 (1986). Goode cites the Restatement (Second) of Torts § 323 (1965) to support this duty. This section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Mack Gibson, the resident manager, testified that St. Stephens provided security to the tenants by repairing locks, securing windows, informing tenants of criminal acts occurring in the complex, and routinely inspecting the complex. The security measures undertaken by St. Stephens were for the protection of the residents of the complex, not the general public. Gibson acknowledged that after the incident, daily security patrols were made by local law enforcement at the request of St. Stephens. Nonetheless, the record on appeal contains no evidence that any of the security measures undertaken by St. Stephens were performed with less than due care. Although several tenants and a former property manag-

er stated in affidavits that the tenants relied on the complex to provide security, there is no evidence their reliance caused Goode to suffer the beating. Moreover, Goode admitted in his deposition that he knew St. Stephens did not provide security for the complex at the time of the incident. Therefore, he obviously could not have relied on any undertaking by St. Stephens to prevent the intentional, personal attack. We find no basis for liability under either the Restatement (Second) of Torts nor the common law rule.

## 3. Duty Created by the Lease

Goode next argues that the lease in effect at the time of the incident created a duty for St. Stephens to protect Goode from the attack by third parties. According to Goode, St. Stephens contracted to exclude any unlawful activity within the common areas and to terminate the lease of any tenant who engaged in such activity. Goode asserts he was a third-party beneficiary to the lease and may therefore enforce the promise made for his benefit.

Generally, a third person not in privity of contract with the contracting parties has no right to enforce a contract. However, when the contract is made for the benefit of the third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person. *Bob Hammond Constr. Co. v. Banks Constr. Co.*, 312 S.C. 422, 440 S.E.2d 890 (Ct.App.1994).

Thus, to determine if Goode was a third party beneficiary of the lease, we must construe the terms of the lease to ascertain the intentions of the parties. Common sense and good faith are key principles of construction of the provisions of a contract. In construing terms of a contract, the reviewing court must look at the language of the contract to determine the intentions of the parties. When the language of the contract is clear, explicit and unambiguous, it must be taken and understood in its plain, ordinary, and popular sense. *C.A.N. Enters., Inc. v. South Carolina Health & Human Serv. Fin. Comm'n*, 296 S.C. 373, 373 S.E.2d 584 (1988).

■ To establish St. Stephens's duty to protect him, Goode refers to provisions in the lease where the resident agrees not to engage in or permit unlawful activities in the apartment, in the common areas or on the property grounds, and is warned that engaging in or permitting violent or criminal activity is good cause for termination of the lease. We find St. Stephens and the other parties to the lease did not intend to create a direct benefit to Goode of protection from the tortious acts of others. In none of these provisions does St. Stephens covenant to prevent or to protect *tenants* from the violent acts of other tenants or third parties. Therefore, the parties to the lease could not have intended to create such a benefit directly in favor of Goode.

### 4. Duty Created by Federal Regulations and Directives

Goode argues St. Stephens's duty to protect him was created by federal regulations and Department of Housing and Urban Development (HUD) directives and handbooks.

■ As a federally subsidized complex, St. Stephens is governed by federal law and regulations. Goode directs the Court's attention to 24 C.F.R. § 886.123(a) (1996), which provides, "[t]he Owner shall maintain and operate the project so as to provide Decent, Safe, and Sanitary housing and he shall provide all the services, maintenance and utilities which he agrees to provide under the Contract...." However, "[t]he [phrase] 'decent, safe, and sanitary' housing is a subjective term at best." *Perry v. Housing Auth. of Charleston,* 664 F.2d 1210, 1218 n. 13 (4th Cir.1981) (quoting *Boston Pub. Housing Tenants' Policy Council, Inc. v. Lynn,* 388 F.Supp. 493 (D.Mass.1974)). We find this regulation does not impose a duty on the landlord of a subsidized apartment complex to protect tenants and their guests from the violent, intentional attacks of others.

■ Goode also attempts to establish the duty through HUD handbooks and directives. However, he failed to include these materials in the record on appeal. Goode, as the appellant in this issue, has the burden of presenting this Court with an adequate record. *Medlock v. One 1985 Jeep Cherokee,* 322 S.C. 127, 470 S.E.2d 373 (1996) (appellant has the burden to present a sufficient record for appellate court to make a

decision); *Germain v. Nichol*, 278 S.C. 508, 299 S.E.2d 335 (1983) (appellant has the burden of presenting a sufficient record for review); *Vespazianni v. McAlister*, 307 S.C. 411, 415 S.E.2d 427 (Ct.App.1992) (appellant has the burden of presenting a sufficient record for review). Because Goode did not provide adequate materials for the Court to consider this argument, we must affirm the trial court on this issue.

## 5. Proximate Cause

Although Goode valiantly attempts to establish a duty on the part of St. Stephens to protect him from attacks by tenants and others, he fails to address the trial court's finding that even if Goode had established a duty, the breach of this duty was not the proximate cause of his injuries.

To prevail on his negligence claim, Goode must prove three elements, (1) a duty of care owed by St. Stephens to him; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of that duty. *Vinson v. Hartley*, 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996). "[P]roximate cause is the efficient, or direct, cause—the thing which brings about the injuries complained of. Negligence is not actionable unless it is a proximate cause of the injuries, and it may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided." *Hughes v. Children's Clinic, P.A.*, 269 S.C. 389, 398, 237 S.E.2d 753, 757 (1977). "The touchstone of proximate cause in South Carolina is foreseeability. Foreseeability is determined by looking to the natural and probable consequences of the act complained of. A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence." *Vinson*, 324 S.C. at 400, 477 S.E.2d at 721 (citations omitted). In addition,

> The proposition that the wrongful or illegal act of an independent third person may not be regarded as such a consequence of a tort-feasor's alleged wrong as should entail legal liability must rest ... upon the assumption that such a consequence is not one of which a person who assumes the discharge of the ordinary civil obligation has knowledge or the opportunity by the exercise of reasonable diligence to

acquire knowledge; that it is an unnatural and abnormal intervention in the ordinary train of events and consequences not reasonably to be anticipated from the act or omission which is charged to the alleged tort-feasor as a breach of duty.

*Crowley v. Spivey,* 285 S.C. 397, 407, 329 S.E.2d 774, 780–81 (Ct.App.1985) (quoting *Green v. Atlanta & Charlotte Air Line Ry. Co.,* 131 S.C. 124, 126 S.E. 441 (1925)).

As noted above, St. Stephens had no notice the attack on Goode was going to occur. It had no reason to foresee that a breach of any of the duties Goode attempts to impose on it would have the natural and probable consequence of resulting in an intentional attack upon Goode by third parties at the apartment complex. Accordingly, St. Stephens was not negligent.

## CONCLUSION

Considering the facts in the light most favorable to Goode, we conclude there is no genuine issue of material fact concerning St. Stephens's liability for the injuries Goode suffered. Consequently, the trial court did not err in granting summary judgment in favor of St. Stephens.

The decision of the trial court is AFFIRMED.

CONNOR and HUFF, JJ., concur.