PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

R.J. GRIFFIN & COMPANY, d/b/a
Sebrell/Griffin & Company, a/k/a
Sebrell/Griffin General Contractors,
*Plaintiff-Appellant,*

v.

BEACH CLUB II HOMEOWNERS
ASSOCIATION, INCORPORATED,
*Defendant-Appellee.*

No. 03-2177

R.J. GRIFFIN & COMPANY, d/b/a
Sebrell/Griffin & Company, a/k/a
Sebrell/Griffin General Contractors,
*Plaintiff-Appellant,*

v.

BEACH CLUB III AT WINDY HILL,
*Defendant-Appellee.*

No. 03-2178

R.J. GRIFFIN & COMPANY, d/b/a
Sebrell/Griffin & Company, a/k/a
Sebrell/Griffin General Contractors,
*Plaintiff-Appellant,*

v.

BEACH CLUB AT WINDY HILL
CONDOMINIUM ASSOCIATION,
*Defendant-Appellee.*

No. 03-2179

Appeals from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, District Judge.
(CA-99-3002-4-12; CA-99-3952-4-12; CA-99-3953-4-12)

Argued: June 4, 2004

Decided: September 16, 2004

Before WILKINSON, LUTTIG, and MICHAEL, Circuit Judges.

---

Affirmed by published opinion. Judge Michael wrote the opinion, in
which Judge Wilkinson and Judge Luttig joined.

---

**COUNSEL**

**ARGUED:** David Lamar Little, Jr., ROBINSON, BRADSHAW &
HINSON, P.A., Rock Hill, South Carolina, for Appellant. John Pat-
rick Henry, THOMPSON & HENRY, Conway, South Carolina, for
Appellees. **ON BRIEF:** Scott W. Gaylord, ROBINSON, BRAD-
SHAW & HINSON, P.A., Rock Hill, South Carolina, for Appellant.
Emma Ruth Brittain, THOMPSON & HENRY, Myrtle Beach, South
Carolina, for Appellees.

---

**OPINION**

MICHAEL, Circuit Judge:

After a South Carolina homeowners association discovered con-
struction defects in its condominium building, it sued the general con-
tractor in state court for negligence and breach of the implied
warranty of good workmanship. The general contractor then sued the
association in federal court, proceeding under the Federal Arbitration
Act (FAA), 9 U.S.C. § 1 *et seq.*, to force arbitration under clauses in
the general construction contract and the master deed. The homeown-

ers association is not a party to the general contract, nor does it seek a direct benefit from the contract in asserting its claims. The general contractor is not a third-party beneficiary of the master deed and is not otherwise entitled to invoke its arbitration clause. We therefore affirm the district court's order denying the general contractor's motion to compel arbitration.

I.

This consolidated appeal involves three related cases filed by R.J. Griffin & Company (Griffin), a construction company, against a homeowners association in the District of South Carolina. In each case Griffin seeks to compel the homeowners association to arbitrate claims asserted against Griffin in a state court action filed in Horry County, South Carolina. Because the arbitration provisions and legal issues are identical in the three cases before us, the parties agreed to base their arguments on the record in *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, No. 03-2177 (4th Cir.). The facts are as follows.

On October 27, 1995, Drake Development Corporation IV (Drake), as owner, entered into a general construction contract with Griffin, as contractor. Drake agreed to pay Griffin $4.8 million to construct a forty-five unit condominium known as The Beach Club II at Windy Hill (The Beach Club), located in North Myrtle Beach, South Carolina. Section 7.9.1 of the general conditions in the contract requires that "[a]ll claims, disputes and other matters in question between the Contractor [Griffin] and the Owner [Drake] arising out of, or relating to, the Contract Documents or the breach thereof . . . shall be decided by arbitration." J.A. 129.

After Griffin completed construction of The Beach Club in 1996, Drake filed a master deed for the property in the Register of Deeds for Horry County, South Carolina. The deed imposes certain restrictions and obligations on the Grantor (Drake), the owners of individual condominium units, and the Beach Club II Homeowners Association, Inc. (the Association), an entity charged by the deed to maintain the common elements of The Beach Club property. Article XXIV of the deed requires the arbitration of "any dispute arising out of use, ownership or occupancy of . . . the Common Elements . . . and any com-

plaint against the Grantor." J.A. 114. Griffin, the contractor, is not a party to the deed, nor is it referred to anywhere in the deed's provisions.

After Drake conveyed title to the buyers of the individual condominium units, the building began leaking water through its exterior walls. A subsequent inspection revealed numerous construction defects. On March 2, 1999, the Association filed a complaint in South Carolina state court against Griffin, Drake, and two other defendants. The complaint, as amended, asserted claims against Griffin for negligence and breach of the implied warranty of good workmanship. Later, on September 7, 1999, Griffin filed a complaint in federal court seeking an order, under the FAA and South Carolina state law, to compel the Association to arbitrate its negligence and breach of warranty claims. Griffin alleged that the Association was subject to mandatory arbitration based on provisions in the general construction contract and The Beach Club master deed. Griffin filed a motion to compel arbitration, but the district court dismissed Griffin's complaint, citing principles of abstention. We reversed and remanded, instructing the district court to rule on the merits of Griffin's motion to compel arbitration. *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 3 Fed. Appx. 43 (4th Cir. 2001) (unpublished). On remand the district court denied Griffin's motion to compel, and Griffin appeals for the second time.

## II.

Griffin argues that the Association is compelled to arbitrate its negligence and breach of warranty claims under two separate arbitration provisions. First, Griffin asserts that equitable estoppel binds the Association to the general contract's arbitration provision. Second, Griffin asserts that it is a third-party beneficiary of the master deed, which permits it to invoke the deed's arbitration provision. Griffin says in the alternative that the Association is equitably estopped from avoiding the master deed's arbitration provision.

## A.

Griffin's main argument is that the arbitration clause in the general contract is enforceable against the Association through the doctrine of

equitable estoppel.[1] Generally, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed" to arbitrate. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Of course, it is well established that "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." *Id.* This happens when "theories arising out of common law principles of contract and agency law" are used to bind nonsignatories to arbitration agreements. *Id.* at 417 (quoting *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). In the present case Griffin asserts that the Association, though not a signatory to the general contract, is equitably estopped from avoiding the contract's arbitration provision.

The doctrine of equitable estoppel "precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Id.* at 417-18 (internal quotation marks and citations omitted). In the context of arbitration, the doctrine applies when one party attempts "to hold [another party] to the terms of [an] agreement" while simultaneously

---

[1]In deciding whether a party may be compelled to arbitrate a dispute, we "apply ordinary state law principles that govern the formation of contracts," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and "the federal substantive law of arbitrability," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In other words,

> state law determines questions concerning the validity, revocability, or enforceability of contracts generally, but the Federal Arbitration Act . . . create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. Because the determination of whether [the Association], a nonsignatory, is bound by the [general] contract presents no state law question of contract formation or validity, we look to the federal substantive law of arbitrability to resolve this question.

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (internal quotation marks and citations omitted).

trying to avoid the agreement's arbitration clause. *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981). We have held more specifically that "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it [is seeking or] receives a direct benefit from a contract containing an arbitration clause." *Schwabedissen*, 206 F.3d at 418 (quotation marks and citations omitted). Our job here is to determine whether the Association is seeking a direct benefit from the general construction contract between Drake and Griffin.

Our guidance for this inquiry comes from *Schwabedissen*, 206 F.3d 411, where we applied the "direct benefits" theory of estoppel in affirming the enforcement of an arbitration award. In that case International Paper Company (by a predecessor) agreed to buy an industrial saw from Wood Systems, Inc., a distributor. Wood Systems, in turn, engaged its manufacturer, Schwabedissen Maschinen & Anlagen GMBH, to build the saw according to specifications set forth in a contract between Wood and Schwabedissen. The saw was delivered to International Paper in due course, but it never worked properly. Wood Systems went bankrupt in the meantime, and International Paper sued Schwabedissen in district court, alleging "breach of contract . . . and breach of warranties" based on the Wood-Schwabedissen contract. *Id.* at 414. The district court granted Schwabedissen's motion to compel International Paper to arbitrate based on an arbitration clause in the Wood-Schwabedissen contract. After Schwabedissen won in arbitration, the district court enforced the award against International Paper. On appeal to us International Paper repeated its argument that it was not bound to arbitrate because it was not a signatory to the Wood-Schwabedissen contract. We disagreed because "a party may be [equitably] estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* at 418. Because International Paper was seeking to gain a direct benefit from certain provisions in the Wood-Schwabedissen contract, we held that it was estopped from avoiding the contract's arbitration provision. As we explained:

> The Wood-Schwabedissen contract provides part of the factual foundation for every claim asserted by International

Paper against Schwabedissen. . . . International Paper alleges that Schwabedissen failed to honor the warranties in the Wood-Schwabedissen contract and it seeks damages, revocation, and rejection "in accordance with" that contract. International Paper's entire case hinges on its asserted rights under the Wood-Schwabedissen contract; it cannot seek to enforce those contractual rights and avoid the contract's [arbitration] requirement.

*Id.*

In urging arbitration in this case, Griffin relies on the first sentence of the block quote to argue that a nonsignatory seeks a direct benefit whenever a "contract provides part of the factual foundation" for its complaint. Appellant's Br. at 18. Griffin does not read far enough. As the quote ultimately reveals, we concluded that International Paper's "*entire case*" — to recover because the saw was a lemon — "hinge[d] on its asserted rights under the Wood-Schwabedissen contact." *Schwabedissen*, 206 F.3d at 418 (emphasis added). In attempting to enforce those rights, International Paper was seeking a direct benefit from the contract, and it was therefore estopped from avoiding the part of the contract that required arbitration. *Id.*

Having reviewed *Schwabedissen*, we turn to whether the Association is seeking a direct benefit from the construction contract between Drake and Griffin. The Association makes two claims against Griffin. First, it claims that Griffin was negligent in constructing the condominium. Under South Carolina law "a cause of action in negligence will be available where a builder has violated a legal duty." *Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 737 (S.C. 1989). As the Supreme Court of South Carolina explained:

A violation of a building code violates a legal duty for which a builder can be held liable in tort for proximately caused losses. [South Carolina law also] imposes a legal duty on builders to undertake construction commensurate with industry standards. Where a building code or industry standard does not apply, public policy further demands the imposition of a legal duty on a builder to refrain from con-

structing housing that he knows or should know will pose
serious risks of physical harm.

*Id.* (citation omitted). The Association's negligence claim is that Griffin violated legal duties, as described in *Columbia Lumber*, by (among other things) constructing separation walls, installing studs, and using combustible materials in a manner that violated the Standard Building Code. The Association's second claim against Griffin is for breach of the implied warranty of good workmanship. Under South Carolina law "a contractor who constructs a dwelling impliedly warrants that the work will be performed in a careful, diligent, workmanlike manner." 17 S.C. Jur. Constr. Law § 54. *See also Columbia Lumber*, 384 S.E.2d at 736. The warranty arises from a contractor's role as a builder, not "from the construction contract to which the builder is a party." *Columbia Lumber*, 384 S.E.2d at 736. The Association's implied warranty claim relies on the same factual allegations as its negligence claim.

Griffin argues that by bringing these two claims, the Association is seeking a direct benefit from the general contract. Specifically, Griffin argues that because "the general contract was . . . the source of both the duty and warranty that Griffin allegedly breached and that gave rise to the Association's claims," Appellant's Br. at 18, the Association is necessarily seeking a direct benefit from that contract. Griffin's argument ignores the basis for the Association's claims. Under South Carolina common law the legal duties Griffin allegedly violated arise from its role as the builder of the Beach Club condominium; these duties are not dependent on the terms of the general contract. *See Columbia Lumber*, 384 S.E.2d at 736-37. It is true that the formation of the contract meant that Griffin would construct the condominium, thereby assuming the common law duties South Carolina places on a builder. Griffin's assumption of these duties benefitted the Association, but the benefit flowed from South Carolina law, not from the construction specifications of the general contract. *See Mag Portfolio Consultant v. Merlin Biomed Group*, 268 F.3d 58, 61 (2d Cir. 2001) (equitable estoppel does not apply when a benefit results from "the contractual relation of parties to an agreement . . . [and] not . . . [from] the agreement itself"); *Coots v. Wachovia Sec., Inc.*, 304 F. Supp. 2d 694, 699 (D. Md. 2003) (benefit is indirect if it "flows as a result of contract formation").

Griffin also argues that language in paragraph nine of the Association's complaint in state court demonstrates that it is seeking a direct benefit from the general contract. Paragraph nine alleges:

> In the construction of the Beach Club II condominium project, the Defendants violated the Standard Building Code; failed to use good construction practices; failed to follow manufacturer's requirements and recommendations; failed to follow industry standards; failed to comply with the appropriate standard of care; and *failed to follow the plans and specifications*.

J.A. 99 (emphasis added). According to Griffin, this paragraph shows "that the Association . . . seeks to recover damages for Griffin's alleged failure to follow the plans and specifications in [the general] contract." Appellant's Br. at 19. We disagree. Although paragraph nine includes the allegation that the defendants collectively (Griffin, Drake, the architect, and the stucco system supplier) failed to follow the plans and specifications, this allegation is not the basis for either of the Association's claims against *Griffin*. Rather, the alleged wrongful conduct supporting the Association's claims against Griffin is spelled out specifically in paragraph ten, which alleges:

> The Defendants were negligent, reckless, willful and wanton and grossly negligent in the design and construction of the Beach Club II condominium building in numerous particulars including but not limited to the following: . . .

> ### AS TO [GRIFFIN]

> a. In constructing the tenant separation walls in a manner that does not comply with the Standard Building Code . . . .

> b. In using combustible material in a Type I construction in violation of the Standard Building Code . . . .

> c. In failing to fire stop concealed horizontal spaces . . . .

> f. In failing to properly install the . . . stud sys-
> tem in violation of the Standard Building Code.
> . . .

J.A. 99. These and other acts (improper installation of the stucco sys-
tem, for example) alleged in paragraph ten are premised on violations
of legal duties imposed on builders by South Carolina common law.
Again, "a [South Carolina] builder may be liable to a home buyer in
tort . . . where (1) the builder has violated an applicable building code;
(2) the builder has deviated from industry standards; or (3) the builder
has constructed housing that he knows or should know will pose seri-
ous risks of physical harm." *Columbia Lumber*, 384 S.E.2d at 738.

Even if the Association could have asserted a claim against Griffin
for breaching the general contract, that does not mean the Association
cannot bring a case based on extra-contractual duties that South Caro-
lina law imposes on a builder. South Carolina holds that "if a builder
performs construction in such a way that he violates a contractual
duty *only*, then his liability is only contractual. If he acts in a way as
to violate a legal duty, however, his liability is both in contract and
in tort." *Columbia Lumber*, 384 S.E.2d at 737. Griffin thus has two
sets of duties: one arises out of its role as a builder, and the other
arises out of its construction contract with Drake. The Association's
claims are premised on the former; its claims do not hinge on any
rights it might have under the general contract. *See Schwabedissen*,
206 F.3d at 418. This means that Griffin's liability will be determined
by its duties as a builder under South Carolina common law, not by
its duties under the general contract. Accordingly, the Association, in
asserting its claims, is not seeking a direct benefit from the provisions
of the general contract it did not sign, and the doctrine of equitable
estoppel cannot be used to force the Association to arbitrate.

Our conclusion does not mean that a nonsignatory may use artful
pleading to avoid arbitration when "in substance . . . [it] is attempting
to hold [a party] to the terms of [an] agreement." *Hughes Masonry
Co.*, 659 F.2d at 838. For example, if the Association brought a negli-
gence or breach of implied warranty claim because the developer
"had contracted [with Griffin] for blue paint but instead received
brown," *Columbia Lumber*, 384 S.E.2d at 737 n.3, Griffin would have
a case for arbitration. That is because Griffin's failure to provide the

correct color of paint would violate a duty "created solely by [the general] contract." *Id.* at 737. But here the Association is seeking to enforce extra-contractual common law rights created by South Carolina to protect homeowners from shoddy construction practices. A homeowner (or his or her association) asserting these rights "[i]n a Suit at common law" is entitled to a jury trial under the Seventh Amendment. *See* U.S. Const. amend. VII. A party may, of course, waive the jury trial right by signing an agreement to arbitrate or by binding itself to arbitration as a nonsignatory through traditional principles of contract or agency law. *See Schwabedissen*, 206 F.3d at 416-17. In this case, the Association did not sign the general contract, and it did not otherwise bind itself to arbitrate under that contract.

B.

Griffin next argues that it may compel the Association to arbitrate based on the arbitration provision in the master deed. Griffin is not a signatory to the master deed, which is binding only "upon [the] Grantor [Drake] . . . and upon all parties who may subsequently become co-owners of apartments . . . and their respective heirs, legal representatives, successors, and assigns." J.A. 115. Griffin nevertheless maintains that it is an intended third-party beneficiary of the deed and may therefore invoke its arbitration provision.[2] Under South Carolina law,

> Generally, a third person not in privity of contract with the contracting parties has no right to enforce a contract. However, when the contract is made for the benefit of the third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person.

*Goode v. St. Stephens United Methodist Church*, 494 S.E.2d 827, 833 (S.C. Ct. App. 1997). In order to determine whether the parties intended Griffin to be a third-party beneficiary, we must look within

---

[2]Because this issue presents a question of the parties' intentions during contract formation, *see Goode v. St. Stephens United Methodist Church*, 494 S.E.2d 827, 833 (S.C. Ct. App. 1997), we apply South Carolina contract law. *See supra* n.1, at 5.

"the four corners of the deed." *Gardner v. Mozingo*, 358 S.E.2d 390, 392 (S.C. 1987).

Griffin argues that the plain language of the master deed's arbitration provision indicates that the parties intended to benefit Griffin. Article XXIX of the deed says that the "Owner or occupant agrees that any dispute arising out of use, ownership, or occupancy of an apartment of the Common Elements . . . and any complaint against the Grantor [Drake] shall be settled by binding arbitration." J.A. 114. Griffin contends that this provision makes "two different [categories] of claims [subject to arbitration]: (i) any dispute arising out of the use, ownership, or occupancy of the common elements, and (ii) any complaint against Drake — the Grantor under the master deed." Appellant's Br. at 21-22. Because Drake is mentioned in the second category, but not the first, Griffin argues that the first category was "*intended* to secure arbitration of 'any dispute' involving the common elements, not only those disputes involving the Grantor." *Id.* at 23. The first arbitration category does appear to cover "common elements" disputes that might not involve Drake, for example, a dispute between unit owners. That does not mean, however, that the parties to the master deed intended to extend the benefit of arbitration to any third party who is not bound by the deed. We "cannot [read words] into a contract which impart intent wholly unexpressed when the contract was executed." *Blakeley v. Rabon*, 221 S.E.2d 767, 769 (S.C. 1976). Simply put, Griffin is not referred to, either directly or indirectly, in any part of the master deed. Accordingly, we agree with the district court that "the language of the master deed does not clearly indicate that, at the time of contracting, the parties intended to provide Griffin with a direct benefit." J.A. 216.

Griffin also argues that an affidavit submitted by Russell Drake proves that the parties to the master deed intended to benefit Griffin. Mr. Drake says that "the arbitration agreement in the Master Deed [was] designed to benefit not only Drake, but also . . . Griffin." J.A. 131. Under South Carolina law the "terms of an unambiguous deed may not be varied or contradicted by evidence drawn from sources other than the deed itself." *Mozingo*, 358 S.E.2d at 392. There is an ambiguity only if "the terms of the contract [or deed] are reasonably susceptible of more than one interpretation." *South Carolina Dept. Natural Res. v. Town of McClellanville*, 550 S.E.2d 299, 302 (S.C.

2001). Griffin has not pointed to any part of the deed that is reasonably susceptible to the interpretation that the parties intended for the arbitration provision to benefit Griffin. As a result, we may not consider Mr. Drake's affidavit.

Finally, Griffin contends that the Association is equitably estopped from avoiding the arbitration clause in the master deed. The master deed requires the Association to maintain the common elements of The Beach Club, and this gives the Association standing to assert the claims against Griffin for shoddy workmanship. Therefore, Griffin argues, because the Association has "invoked the benefits of its status as the homeowners association under the master deed, [it] cannot simultaneously avoid the terms of the arbitration provision." Appellant's Br. at 30. This argument misses a key element of estoppel. Equitable estoppel operates to prevent one party from holding another to the terms of an agreement while simultaneously avoiding the same agreement's arbitration clause. *See Hughes Masonry Co.*, 659 F.2d at 838. Here, the Association is not attempting to hold Griffin to any term of the master deed. Although the deed authorizes the Association to bring claims such as those asserted against Griffin, the claims themselves have nothing to do with the breach of any provision of the master deed. In this circumstance, Griffin cannot invoke equitable estoppel to force the Association to arbitrate under the master deed.

In sum, Griffin is not a third-party beneficiary of the master deed, nor can equitable estoppel be invoked here to enforce the deed's arbitration provision. Accordingly, Griffin may not compel arbitration under the master deed.

### III.

We affirm the district court's order denying Griffin's motion to compel arbitration.

*AFFIRMED*