659 S.E.2d 196

**Roger M. SINGLETON, Jr., Appellant,**

v.

**George D. SHERER and Julie Underwood, Respondents.**

**No. 4346.**

Court of Appeals of South Carolina.

Heard Feb. 12, 2008.
Decided Feb. 25, 2008.

188

Darra James Coleman and Charles S. Gwynne, both of Columbia, for Appellant.

S. Jahue Moore, of West Columbia, for Respondent.

ANDERSON, J.

In this personal injury action for injuries sustained from a raccoon bite, Roger Singleton appeals the trial court's grant of summary judgment in favor of Julie Underwood and George Sherer. Singleton challenges each of the trial court's rulings, arguing: (1) he was an invitee, not a licensee, while on Underwood's property the day of the incident; (2) issues of material fact existed regarding negligence on Underwood's behalf; (3) the proximate cause of his injury was the negligence of Underwood; (4) the doctrine of assumption of risk does not bar recovery; and (5) the raccoon was a domestic animal rather than a wild animal. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

A raccoon bit Roger Singleton while he was on George Sherer and Julie Underwood's jointly owned property.[1] Approximately a year before this incident, Singleton rescued the raccoon from the yard of a home where he was delivering furniture "but wanted someone else to take care of it." Subsequently, Underwood agreed to take the raccoon. According to Singleton, he was familiar with the raccoon from the time it was removed from the wild and placed in Underwood's care. Indeed, Singleton "would come to [Underwood's] home from time to time and was often around the [raccoon]. He would play with the raccoon and he liked it." Singleton testified the raccoon was neither vicious nor dangerous and had never bitten anyone prior to the incident.

The night before the incident, the raccoon escaped from his outdoor pen and reappeared the next morning in a "disheveled" state. After letting the raccoon into the house, Underwood attempted to calm the animal by picking him up and feeding him. However, when her dog entered the room, the raccoon bit Underwood's arm severing an artery and median nerve. Underwood was taken by ambulance to the emergency room accompanied by her children.

At her deposition, Underwood was asked if she called anyone in her family for help. From the hospital, she first called her husband but he was out of town. She called her father, Duke Singleton (Duke), to tell him she had been bitten. She explained:

A: And, so then I called my father and told him that he had bitten me. . . . I was very surprised at his behavior because he had never done anything like that before, so I didn't know, you know, what was going on and he was in the house and to please go to my house and open the door so he could get out.

Q: Okay

A: I was really worried because my two cats and my dog were in the house and I just didn't know what his behavior would be and I didn't want them to get hurt.

---

1. Appellant, Roger Singleton, is the brother of Respondent, Julie Underwood, and former brother-in-law of Respondent, George Sherer.

. . .

Q: Were you in the hospital when you called your dad?

A: Yes.

Q: All right. At any point, did you instruct that he was not to call your brother . . .

A: No.

Q: . . . for assistance? Okay. At any point, did you tell either your dad or Roger that they were not have any contact with [the raccoon]?

A: If so I do not . . . I did not talk to Roger, so I didn't tell him anything. I'm pretty sure I told my dad, don't go inside or try to catch him because I didn't know what he would do, but I'm . . . it's really hard to remember exactly. My dad would probably remember better than me.

Q: Okay. Prior to September 24th of 2001, did you pretty much have an open door policy with your dad and your brother? Any by open door policy, I mean, that they could come in to your house or show up at your house without calling for prior permission?

A: Yes, we all do in our family.

. . .

Q: And that's the way it is with all of you that you just . . . you're welcomed . . .

A: Yes.

Q: . . . and your home and they're welcomed at your home, right?

A: Yes.

Q: To the best of your knowledge, would there have been any reason for Roger to believe that he was not authorized to go into your home?

A: No.

Q: Okay. Did you have any objection to Roger actually going into your home . . .

A: No.

After learning his daughter was bitten and in the hospital, Duke called and informed Singleton of the incident and sug-

gested he go to Underwood's home "to see what he could do." However, Duke advised Singleton to wait until he could arrive "with a net and some sacks" and specifically instructed Singleton not to capture the raccoon by himself. When Singleton arrived at Underwood's home, no one was home, and his father had not yet arrived. Despite his father's warning, Singleton entered the home and proceeded into the room where the raccoon was located. Singleton confronted the raccoon and attempted to "soothe the animal with his voice." During Singleton's attempt to calm the raccoon, "the animal attacked him and bit him on the hand." Shortly thereafter, Duke arrived and Singleton made another effort to capture the raccoon with the burlap sack his father provided. While Singleton was successful in capturing the raccoon, "the raccoon bit Singleton a second time through the bag."

At his deposition, Singleton explained his arrival at Underwood's house:

Q: Did [Underwood and Sherer] know you were going into their house?

A: I don't know.

Q: Did they ask you to go into their house?

A: The phone call that I had was from my father. I never spoke with them.

Q: All right, so the answer is . . .

A: I would walk into their house on a regular basis without knocking.

Q: I understand. I just wanted to make sure that we understand on this particular day they, either of them, asked you to come to their house?

A: I didn't speak directly to either one of them.

. . .

Q: The person who had asked you to go was your father?

A: Correct.

Q: Now, you say you had a practice of walking into their house uninvited?

A: Absolutely.

Subsequently, Singleton filed a complaint against Sherer and Underwood for the injuries he sustained from the raccoon

bite while on their jointly owned property. The trial court granted summary judgment in favor of Sherer and Underwood, reasoning (1) Singleton's status on the property at the time of the incident was "at best" a social guest or licensee and the duty owed to a licensee is much less than the duty owed to an invitee; (2) Singleton failed to prove any negligence on the part of Underwood because there was no evidence the raccoon was vicious prior to the day of the incident; (3) the acts and conduct of Singleton were the proximate cause of his injury; and (4) the true cause of Singleton's injury was his voluntarily exposure to a known risk. Singleton filed a motion to alter or amend judgment, challenging both the trial court's ruling regarding his "licensee" status and the trial court's application of the assumption of risk defense. Singleton's motion was denied.

## STANDARD OF REVIEW

"In reviewing the grant of summary judgment, [an appellate court] applies the same standard that governs the trial court under Rule 56, SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Pittman v. Grand Strand Entm't, Inc.*, 363 S.C. 531, 536, 611 S.E.2d 922, 925 (2005); *Young v. South Carolina Dep't of Disabilities & Special Needs*, 374 S.C. 360, 649 S.E.2d 488 (2007); *Henderson v. Allied Signal, Inc.*, 373 S.C. 179, 644 S.E.2d 724 (2007); *Eagle Container Co., LLC v. County of Newberry*, 366 S.C. 611, 622 S.E.2d 733 (Ct.App.2005); *B & B Liquors, Inc. v. O'Neil*, 361 S.C. 267, 603 S.E.2d 629 (Ct.App. 2004). In determining whether any triable issue of fact exists, the evidence and all inferences that can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Catawba Indian Tribe of South Carolina v. State*, 372 S.C. 519, 642 S.E.2d 751 (2007); *Medical Univ. of South Carolina v. Arnaud*, 360 S.C. 615, 602 S.E.2d 747 (2004); *Moore v. Weinberg*, 373 S.C. 209, 216, 644 S.E.2d 740, 743 (Ct.App.2007); *Rife v. Hitachi Constr. Mach. Co., Ltd.*, 363 S.C. 209, 609 S.E.2d 565 (Ct.App.2005). If triable issues exist, those issues must go to the jury. *Mulherin–Howell v. Cobb*, 362 S.C. 588, 608 S.E.2d 587 (Ct.App.2005).

■ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Hansson v. Scalise Builders of South Carolina*, 374 S.C. 352, 650 S.E.2d 68 (2007); *Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 611 S.E.2d 485 (2005); *BPS, Inc. v. Worthy*, 362 S.C. 319, 608 S.E.2d 155 (Ct.App.2005). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party. *RWE NUKEM Corp. v. ENSR Corp.*, 373 S.C. 190, 644 S.E.2d 730 (2007); *Connor Holdings, L.L.C. v. Cousins*, 373 S.C. 81, 644 S.E.2d 58 (2007); *Willis v. Wu*, 362 S.C. 146, 607 S.E.2d 63 (2004); *see also Schmidt v. Courtney*, 357 S.C. 310, 592 S.E.2d 326 (Ct.App.2003) (stating that all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

■ Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Gadson v. Hembree*, 364 S.C. 316, 613 S.E.2d 533 (2005); *Montgomery v. CSX Transp., Inc.*, 362 S.C. 529, 608 S.E.2d 440 (Ct.App.2004). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Montgomery v. CSX Transp., Inc.*, 376 S.C. 37, 656 S.E.2d 20 (2007) (Shearouse Adv. Sh. No. 1 at 11); *Baugus v. Wessinger*, 303 S.C. 412, 401 S.E.2d 169 (1991); *Nelson v. Charleston County Parks & Recreation Comm'n*, 362 S.C. 1, 605 S.E.2d 744 (Ct.App.2004). When reasonable minds cannot differ on plain, palpable, and indisputable facts, summary judgment should be granted. *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *Bradley v. Doe*, 374 S.C. 622, 649 S.E.2d 153 (Ct.App.2007); *McCall v. State Farm Mut. Auto. Ins. Co.*, 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary

support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank v. Schmauch,* 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003). The nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Rife,* 363 S.C. at 214, 609 S.E.2d at 568.

"The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder." *Dawkins v. Fields,* 354 S.C. 58, 69, 580 S.E.2d 433, 438 (2003) (quoting *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001)); *Rumpf v. Massachusetts Mut. Life Ins. Co.,* 357 S.C. 386, 593 S.E.2d 183 (Ct.App.2004). Summary judgment is a drastic remedy and should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.,* 357 S.C. 631, 594 S.E.2d 455 (2004); *Hawkins v. City of Greenville,* 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004).

## *LAW/ANALYSIS*

### I. Singleton's Status / *Invitee v. Licensee*

Singleton argues the trial court erred in deducing he was a licensee, not an invitee, while on Underwood's property the day of the incident. We disagree.

A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent. *Neil v. Byrum,* 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986). When a licensee enters onto the property of another, the primary benefit is to the licensee, not the property owner. *Hoover v. Broome,* 324 S.C. 531, 535, 479 S.E.2d 62, 65 (Ct.App.1996); *Landry v. Hilton Head Plantation Prop. Owner's Ass'n,* 317 S.C. 200, 203, 452 S.E.2d 619, 621 (Ct.App.1994). A licensee is a person whose presence is tolerated, a person not necessarily invited on the premises, but one who is privileged to enter or remain on the premises only by the property owner's express or implied consent. *Sims v. Giles,* 343 S.C. 708, 720, 541 S.E.2d 857, 864 (Ct.App.2001). While the most common example of a licensee is the social guest, "[a]n injured person has been held to be a licensee where he entered premises to seek

a favor, to make inquiries or ask directions, to do volunteer work, to use recreational facilities without asking specific permission, to recover an item of personal property left on the premises, to obtain some article of value given to the licensee by the occupant, or while chasing his dog." *Id.*

"[An invitee is a person] who enters onto the property of another by express or implied invitation, his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land, and there is a mutuality of benefit or a benefit to the owner." *Sims,* 343 S.C. at 716–17, 541 S.E.2d at 862; *see also Parker v. Stevenson Oil Co.,* 245 S.C. 275, 280, 140 S.E.2d 177, 179 (1965) (noting when an invitee enters onto the property of another, the primary benefit is to the property owner, not the invitee); *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 441, 494 S.E.2d 827, 831 (Ct.App.1997) ("[A]n invitee is a person who enters onto the property of another at the express or implied invitation of the property owner."). The law recognizes two types of invitees: the public invitee and the business visitor. *Sims,* 343 S.C. at 717, 541 S.E.2d at 862. "A public invitee is one who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open to the public." *Goode,* 329 S.C. at 441, 494 S.E.2d at 831; *Sims,* 343 S.C. at 717, 541 S.E.2d at 862. In contrast, a business visitor is an invitee whose purpose for entering the property is either directly or indirectly connected with the purpose for which the property owner uses the land. *Parker,* 245 S.C. at 280, 140 S.E.2d at 179; *Sims,* 343 S.C. at 717, 541 S.E.2d at 862; *Goode,* 329 S.C. at 441, 494 S.E.2d at 831; *Hoover,* 324 S.C. at 535, 479 S.E.2d at 65. "[T]he class of persons qualifying as business visitors is not limited to those coming upon the land for a purpose directly or indirectly connected with the business conducted thereon by the possessor, but includes as well those coming upon the land for a purpose connected with their own business, which itself is directly or indirectly connected with a purpose for which the possessor uses the land." 62 Am.Jur.2d Premises Liability § 88 (1990).

Singleton was a licensee while on Underwood's property the day of the incident. By his own admission, Singleton did not enter Underwood's property through an express or implied

invitation. Rather, Singleton voluntarily entered the premises in an effort to capture the raccoon regardless of specific instructions to the contrary. Thus, as described in *Sims,* 343 S.C. at 720, 541 S.E.2d at 864, Singleton was on Underwood's property performing "volunteer work," which is an activity traditionally associated with the licensee status.

## II. Duty Owed to Licensees and Invitees

Singleton maintains the trial court erred in asseverating there was no genuine issue of material fact regarding Underwood's contributory negligence. Specifically, Singleton argues Underwood breached her duty to warn of any hidden and latent dangers posed by the raccoon. We disagree.

To establish negligence in a premises liability action, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. *See Hurst v. East Coast Hockey League, Inc.,* 371 S.C. 33, 37, 637 S.E.2d 560, 562 (2006). The court must determine, as a matter of law, whether the law recognizes a particular duty. *Id.* "If there is no duty, then the defendant in a negligence action is entitled to summary judgment as a matter of law." *Id.; see also Hopson v. Clary,* 321 S.C. 312, 314, 468 S.E.2d 305, 307 (Ct.App.1996) ("If the evidence as a whole is susceptible to only one reasonable inference, no jury issue is created and [summary judgment] is properly granted.").

The nature and scope of duty in a premises liability action, if any, is determined based upon the status or classification of the person injured at the time of his or her injury. *Sims v. Giles,* 343 S.C. 708, 715, 541 S.E.2d 857, 861 (Ct.App.2001). South Carolina recognizes four general classifications of persons present on the property of another: adult trespassers, invitees, licensees, and children. *Id.* Different standards of care apply depending upon the classification of the person present. *Id.; see also Larimore v. Carolina Power & Light,* 340 S.C. 438, 444, 531 S.E.2d 535, 538 (Ct.App. 2000) ("The level of care owed is dependent upon the class of the person present."). Thus, Underwood's duty to protect Singleton from conditions on the property largely depends on

whether Singleton was a licensee or an invitee at the time of the incident. *See Landry v. Hilton Head Plantation Prop. Owners Ass'n,* 317 S.C. 200, 203, 452 S.E.2d 619, 621 (Ct.App. 1994).

## A. Licensees

Under South Carolina jurisprudence, "a landowner owes a licensee a duty to use reasonable care to discover the licensee, to conduct activities on the land so as not to harm the licensee, and to warn the licensee of any concealed dangerous conditions or activities." *Landry,* 317 S.C. at 203, 452 S.E.2d at 621; *see Neil v. Byrum,* 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986). The duty owed to a licensee differs from the duty owed to an invitee "in that the [landowner] has no duty to search out and discover dangers or defects in the land or to otherwise make the premises safe for a licensee." 18 S.C. Jur. *Negligence* § 44 (2007); *see Landry,* 317 S.C. at 203, 452 S.E.2d at 621. As the South Carolina Supreme Court explained in *Neil v. Byrum:*

> The [owner or possessor of land] is under no obligation to exercise care to make the premises safe for his reception, and is under no duty toward him except:
>
> (a) To use reasonable care to discover him and avoid injury to him in carrying on activities upon the land.
>
> (b) To use reasonable care to warn him of any *concealed dangerous conditions* or activities which are known to the possessor, or of any change in the condition of the premises which may be dangerous to him, and which he may reasonably be expected to discover.

288 S.C. at 473, 343 S.E.2d at 616 (emphasis in original). "[S]ince a licensee is there for his own benefit, he can be said to accept the premises as they are and demand no greater safety than his host provides himself." F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts* 111–12 (2d ed.1997).

In the case *sub judice,* Underwood owed no duty to Singleton as a licensee because Singleton did not enter Underwood's property through an express or implied invitation. Rather, Singleton voluntarily entered the premises in an effort to capture the raccoon in contrariety to his specific instructions. Under these circumstances, Underwood owed Singleton no

duty greater than the duty she owed to herself. *See Neil*, 288 S.C. at 473, 343 S.E.2d at 616.

## B. Invitees

Generally, the owner of property owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for injuries resulting from the breach of such duty. *Larimore v. Carolina Power & Light*, 340 S.C. 438, 444, 531 S.E.2d 535, 538 (Ct.App.2000). Thus, unlike a licensee, an invitee enters the premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there. *Landry*, 317 S.C. at 203, 452 S.E.2d at 621; *Bryant v. City of North Charleston*, 304 S.C. 123, 125, 403 S.E.2d 159, 161 (Ct.App.1991). In addressing premises liability as it relates to an invitee, the South Carolina Supreme Court expressly adopted section 343A of the Restatement (Second) of Torts (1965) in *Callander v. Charleston Doughnut Corp.*, 305 S.C. 123, 126, 406 S.E.2d 361, 362 (1991). Section 343A provides:

§ 343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

Comment e to section 343A further elaborates:

In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of

ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

Based upon the language of section 343A, Singleton asserts Underwood had a duty to warn him of the dangerous conditions posed by the raccoon regardless of his status as a licensee or invitee at the time of the incident. However, contrary to Singleton's argument, the raccoon did not pose a hidden or latent danger about which Underwood had an affirmative duty to warn Singleton. As evidenced by the record, Singleton was aware the raccoon had bitten Underwood prior to his arrival at her home. Notwithstanding this knowledge, Singleton entered the home and voluntarily exposed himself to any potential danger posed by the raccoon. Thus, as a matter of law, Underwood had no duty to warn Singleton of the known and obvious danger posed by the raccoon regardless of his status as licensee or invitee. *See* Restatement (Second) of Torts § 343A.

## III. Proximate Cause

Singleton proclaims the trial court erred in declaring there was no genuine issue of material fact as to whether Underwood's actions proximately caused his injuries. We disagree.

[P]roximate cause is the efficient, or direct, cause—the thing which brings about the injuries complained of. Negligence is not actionable unless it is a proximate cause of the injuries, and it may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided.

*Hughes v. Children's Clinic, P.A.*, 269 S.C. 389, 398, 237 S.E.2d 753, 757 (1977). Proximate cause requires proof of both causation in fact and legal cause. *Oliver v. South Carolina Dep't of Hwys. & Pub. Transp.*, 309 S.C. 313, 316, 422 S.E.2d 128, 130 (1992). Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence. *Id.* Legal cause is proved by

establishing foreseeability. *Id.* "Foreseeability is determined by looking to the natural and probable consequences of the act complained of. A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence." *Vinson v. Hartley,* 324 S.C. 389, 400, 477 S.E.2d 715, 721 (citations omitted).

In the present case, Singleton fails to prove any negligent act or omission attributable to Underwood as the proximate cause of his injury. First, the record contains no evidence but for Underwood's failure to warn Singleton, he would not have sustained injury. By his own admission, Singleton was aware the raccoon had bitten Underwood prior to his arrival and was warned by his father "not to try and catch the raccoon by himself." Singleton entered Underwood's home and voluntarily exposed himself to the danger posed by the raccoon. The fact Singleton attempted to capture the raccoon in spite of his father's warning refutes any contention he would have proceeded differently and not sustained injury if Underwood warned him.

The record contains no evidence Singleton's injury was foreseeable, as required to establish legal cause. Underwood had no notice the raccoon's attack on Singleton was going to occur. As evidenced by the record, Underwood was hospitalized on the day of the incident and never invited Singleton to enter the property during her absence. Consequently, Underwood had no reason to foresee Singleton would enter her home and attempt to capture the raccoon. Contrary to Singleton's contention, the evidence negates the existence of both causation in fact and legal cause as a matter of law. The trial court did not err in holding there was no genuine issue of material fact as to the proximate cause of Singleton's injuries.

## IV. Assumption of Risk

Singleton avers the trial court erred in granting summary judgment against him based upon the doctrine of assumption of risk, arguing (1) assumption of risk is no longer a complete defense to a negligence action since our Supreme Court's adoption of comparative negligence, and (2) whether Singleton assumed the risk was a question of fact the trial court should have submitted to the jury. We disagree.

## A. Assumption of Risk in South Carolina's Comparative Negligence System

The threshold issue we must determine is whether assumption of risk serves as a complete bar to recovery under South Carolina's comparative negligence system. In *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 245, 399 S.E.2d 783, 784 (1991), the South Carolina Supreme Court adopted a modified version of comparative negligence known as the "less than or equal to" approach. Under this version, "[f]or all causes of action arising on or after July 1, 1991, a plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant." *Id.* Pellucidly, under *Nelson*, a plaintiff's contributory negligence does not bar recovery unless such negligence exceeded that of the defendant. *Id.*

"Assumption of the risk is the deliberate and voluntary choice to assume a known risk." *Baxley v. Rosenblum*, 303 S.C. 340, 347, 400 S.E.2d 502, 507 (Ct.App.1991). The doctrine of assumption of the risk embodies the principle plaintiffs may not recover for injuries received when they voluntarily expose themselves to a known and appreciated danger. *Lowrimore v. Fast Fare Stores, Inc.*, 299 S.C. 418, 424, 385 S.E.2d 218, 221 (Ct.App.1989). South Carolina first adopted assumption of risk within the context of the master-servant relationship, whereby the agreement to become employed included the agreement to assume the risks associated with employment. *See Hooper v. Columbia & Greenville R.R. Co.*, 21 S.C. 541, 547 (1884). While the South Carolina Supreme Court ultimately extended the assumption of risk defense to negligence cases outside the master-servant relationship, the defense is applied less often in its traditional context because of Workers' Compensation laws. *See, e.g., Smith v. Edwards*, 186 S.C. 186, 191, 195 S.E. 236, 238 (1938) ("[Assumption of risk] applies to any case ... where the facts proved show that the person against whom the doctrine of assumption of risk is pleaded knew of the danger, appreciated it, and acquiesced therein.").

In *Davenport v. Cotton Hope Plantation Horizontal Property Regime*, 325 S.C. 507, 513–14, 482 S.E.2d 569, 574 (Ct. App.1997), this court held assumption of risk had been sub-

sumed by South Carolina's adoption of comparative negligence. Consequently, assumption of risk no longer served as a complete bar to a negligence claim; rather, the defense was simply another factor to consider in comparing the parties' negligence. *Id.* In later reviewing *Davenport,* our supreme court analyzed the continuing viability of assumption of risk in South Carolina's comparative negligence system. According to the South Carolina Supreme Court:

> It is contrary to the premise of our comparative fault system to require a plaintiff, who is fifty-percent or less at fault, to bear all of the costs of the injury. In accord with this logic, the defendant's fault in causing an accident is not diminished solely because the plaintiff knowingly assumes a risk. If assumption of risk is retained in its current common law form, a plaintiff would be completely barred from recovery even if his conduct is reasonable or only slightly unreasonable. In our comparative fault system, it would be incongruous to absolve the defendant of all liability based only on whether the plaintiff assumed the risk of injury. Comparative negligence by definition seeks to assess and compare the negligence of both the plaintiff and defendant. This goal would clearly be thwarted by adhering to the common law defense of assumption of risk.

*Davenport v. Cotton Hope Plantation Horizontal Property Regime,* 333 S.C. 71, 86, 508 S.E.2d 565, 573 (1998). Based upon the foregoing, our supreme court concluded "a plaintiff is not barred from recovery by the doctrine of assumption of risk unless the degree of fault arising therefrom is greater than the negligence of the defendant." *Id.* at 87, 508 S.E.2d at 573–74.

Applying this analysis to the case *sub judice,* we agree with Singleton's assertion assumption of risk is no longer a complete bar to recovery under South Carolina's comparative negligence system. This determination is made by the court as a matter of law where the degree of fault arising from the plaintiff's assumption of risk exceeds any negligence on the part of the defendant. *See, e.g., Bloom v. Ravoira,* 339 S.C. 417, 422, 529 S.E.2d 710, 713 (2000) (finding, as a matter of law, plaintiff's own negligence was greater than any potential negligence by defendant, thus precluding his recovery in a negligence action); *Estate of Haley v. Brown,* 370 S.C. 240,

243, 634 S.E.2d 62, 63 (Ct.App.2006) (directed verdict proper where the "only reasonable inference that can be drawn from the evidence is that [plaintiff's] negligence in running into the side of [defendant's] truck outweighed any possible negligence by [defendant] and was the more determinative factor in causing the collision."); *Hopson v. Clary,* 321 S.C. 312, 316, 468 S.E.2d 305, 308 (Ct.App.1996) (where plaintiff's negligence was, as a matter of law, greater than defendant's, trial court correctly concluded doctrine of comparative negligence barred claim). We must determine whether Singleton's assumption of risk was, as a matter of law, greater than any negligence attributable to Underwood and the more determinative factor in causing his injuries.

### B. Singleton's Assumption of Risk

*Davenport* edifies: there are four requirements necessary to establish the assumption of risk defense in South Carolina: (1) the plaintiff must have knowledge of the fact constituting a dangerous condition; (2) the plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself or herself to the danger. 333 S.C. at 78–79, 508 S.E.2d at 569. "The doctrine is predicated on the factual situation of a defendant's acts alone creating the danger and causing the accident, with the plaintiff's act being that of voluntarily exposing himself to such an obvious danger with appreciation thereof which resulted in the injury." *Id.* Moreover, assumption of risk may be implied from the plaintiff's conduct. *Id.*

The undisputed facts establish Singleton freely and voluntarily exposed himself to a known danger which he understood and appreciated. By Singleton's own admission, his actions on the day of the incident were "pretty stupid." Any factual issues which might exist as to Sherer and Underwood's contributory negligence cannot alter the inescapable conclusion Singleton's negligence exceeded fifty percent. Under South Carolina jurisprudence, where evidence of the plaintiff's greater negligence is overwhelming, evidence of slight negligence on the part of the defendant is simply not enough for a case to go to the jury. *See Hopson v. Clary,* 321 S.C. 312, 314, 468 S.E.2d 305, 307 (Ct.App.1996) (noting where the evidence as a

whole is susceptible to only one reasonable inference, no jury issue is created). The trial court did not err in barring Singleton's claim under the assumption of risk doctrine because Singleton was more than fifty percent at fault in causing his injuries.

### V. The Raccoon: A Wild Animal

Singleton maintains the trial court erred by deciding the raccoon was a wild animal rather than a domesticated animal. We disagree.

Initially, we note this issue is not preserved for our review. In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial court. *See Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004); *see also In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) ("An issue may not be raised for the first time on appeal. In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court."). In the present case, the record contains no indication the trial court ruled on the issue of the raccoons domestication. While pled and argued, the final order does not address the domestication of the raccoon because Singleton did not assert a cause of action on the basis of liability for injuries caused by a "domesticated animal" pursuant to section 47–5–20(3) of the South Carolina Code (Supp.2007).

Moreover, Singleton did not file a motion pursuant to Rule 59(e), SCRCP, requesting a ruling on this issue. As noted by our supreme court, "[e]ven after an order is filed, counsel has an obligation to review the order and file a Rule 59(e), SCRCP, motion to alter or amend if the order fails to set forth the findings and the reasons for those findings as required by section 17–27–80 of the South Carolina Code and Rule 52(a), SCRCP." *Pruitt v. State*, 310 S.C. 254, 256, 423 S.E.2d 127, 128 (1992). Singleton's claims regarding domestication of the raccoon are not preserved for our review.

Averring to the merits, the South Carolina Supreme Court set out the common law rule regarding liability for injuries caused by domestic animals in *Mungo v. Bennett*, 238 S.C. 79, 81, 119 S.E.2d 522, 523 (1961). According to the *Mungo* court:

[A]ll domestic animals, whether horses, mules, cattle, dogs, cats or others, are not presumed to be dangerous to persons, and before recovery of damages may be had against the owner the injured party must prove that the particular animal was of a dangerous, or vicious, nature and that this dangerous propensity was either known, or should have been known to the owner.

*Id.; see also* S.C.Code § 47–5–20(3) (Supp.2007) ("[Domesticated animal] means owned or stray cats, dogs, and ferrets or other animals for which there exists a rabies vaccine approved by the department and licensed by the United States Department of Agriculture.").

It should be noted, *Mungo* is no longer the law regarding liability for injuries arising from dogs. In *Hossenlopp By and Through Hossenlopp v. Cannon*, 285 S.C. 367, 329 S.E.2d 438 (1985), our supreme court adopted the law of California, which did not require knowledge of a vicious propensity before liability attached to a dog owner. *Id.* at 372, 329 S.E.2d at 441. *See also* S.C.Code Ann. § 47–3–100 (1987) (imposing strict liability on dog owner for damages arising when person, while lawfully on owner's property, is bitten or otherwise attacked by dog).

As evidenced by his testimony, Singleton was familiar with the raccoon from the time it was removed from the wild and placed in Underwood's care. Singleton professed the raccoon was neither vicious nor dangerous and had never bitten anyone prior to the incident. By Singleton's own admission, the raccoon was not "of a dangerous or vicious nature" which "was either known or should have been known" to Underwood. *Mungo*, 238 S.C. at 81, 119 S.E.2d at 523.

## CONCLUSION

Singleton failed to present any evidence establishing negligence on the part of Underwood. Assumptively concluding that Underwood was guilty of some negligent act, Singleton's own negligence was, as a matter of law, greater than any negligence attributable to Underwood. We rule Singleton's claim was barred under the doctrine of comparative negligence. We hold the acts and conduct of Singleton constituted the sole proximate cause of his injuries. The raccoon was a

wild animal rather than a domesticated animal. The decision of the trial court is accordingly

**AFFIRMED.**

SHORT and THOMAS, JJ., concur.