681 S.E.2d 879

**Ronnie LANE, Respondent,**

v.

**GILBERT CONSTRUCTION COMPANY, LTD., Appellant.**

**No. 26701.**

Supreme Court of South Carolina.

Heard May 12, 2009.

Decided Aug. 17, 2009.

592

Everett A. Kendall, II, of Sweeny, Wingate & Barrow, of Columbia, for Appellant.

D. Kenneth Baker, of Darlington, James H. Moss and H. Fred Kuhn, Jr., both of Moss, Kuhn & Fleming, of Beaufort, for Respondent.

Justice PLEICONES.

In this premises liability action, a jury found for Respondent Ronnie Lane (Lane) in the amount of $75,000. The trial court then granted Lane's motion for a new trial absolute, which ruling Gilbert now challenges on appeal. We affirm.

## FACTS

Appellant Gilbert Construction Company LTD (Gilbert) entered into an agreement to renovate McLeod Regional Medical Center (Hospital). The renovation included work on a courtyard, accessible by an emergency exit from the building. The superintendent of Gilbert testified that during the demolition/foundation phase of the project six holes for footings were created on the site, including one in the courtyard. A number of the holes were covered, but Gilbert decided not to cover the hole in the courtyard. The superintendent explained that he believed that the area was cordoned off.

Sometime between 2:30 and 3:30 a.m. Lane, an HVAC mechanic at the Hospital working the "graveyard shift," responded to the latest in a series of false fire alarms. Lane testified that each time the alarm was activated the alarm system automatically alerted the fire department. Since the fire department had previously responded to false alarms twice during Lane's shift that night, he decided to walk down to tell the switchboard operator to put the system in "test mode" so that it would not automatically alert the fire department.

Lane knocked on the door to the switchboard room and, receiving no answer, chose to walk out of the emergency exit and into the courtyard in order to reach another door to the security and switchboard area. The emergency exit door was slightly ajar and when Lane opened it he saw "caution tape" hanging down on the side of the door. He then stepped out into what he described as "pitch black dark" and fell into the hole, breaking his ankle.

Lane underwent a number of surgeries to repair his ankle and missed weeks of work. All told, Lane's medical care related to the ankle injury totaled $73,754. On cross examination, Lane admitted that he returned to work in his previous capacity as an HVAC mechanic in between his surgeries,

though in sedentary work. Following his last surgery, he was assigned to anew job as a computer operator. In his new job, Lane works at a desk in shifts from 7:00 a.m. until 3:30 p.m., rather than the "graveyard" shift he worked as an HVAC mechanic.

An expert for Lane conducted a vocational assessment and determined that Lane was not capable of performing the job that he had prior to the injury. She further opined that Lane would only be eligible for minimum wage positions if he were to lose the position he currently has.

The jury found Lane 45% at fault and Gilbert 55% at fault and awarded $75,000 in actual damages. Lane moved for a new trial absolute which the court granted.

## ISSUES

I.  Did the trial court err in denying Gilbert's motion for a directed verdict?

II.  Did the trial court err in granting a new trial?

III.  Did the trial court's order granting a new trial deprive Gilbert of its right to trial by jury?

## DISCUSSION

### I. Did the trial court err in denying Gilbert's motion for directed verdict?

Gilbert contends that the evidence does not support classification of Lane as an invitee and instead only supports classification as a licensee or trespasser. Furthermore, Gilbert argues that there is no evidence to show a breach of the landowner's duty to a licensee or trespasser and therefore, Gilbert is entitled to a directed verdict. We disagree.

■ "A motion for directed verdict goes to the entire case and may be granted only when the evidence raises no issue for the jury as to liability." *Ecclesiastes Production Ministries v. Outparcel Assoc., LLC*, 374 S.C. 483, 490, 649 S.E.2d 494, 497 (Ct.App.2007), *citing Carolina Home Builders, Inc. v. Armstrong Furnace Co.*, 259 S.C. 346, 358, 191 S.E.2d 774, 779 (1972).

■ "Under a premises liability theory, a contractor generally equates to an invitor and assumes the same duties that the landowner has, including the duty to warn of dangers or defects known to him but unknown to others." *Larimore v. Carolina Power & Light*, 340 S.C. 438, 448, 531 S.E.2d 535, 540 (Ct.App.2000).

■ The trial court classified Lane as an "invitee." An invitee is a person "who enters onto the property of another by express or implied invitation, his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land, and there is a mutuality of benefit or a benefit to the owner." *Singleton v. Sherer*, 377 S.C. 185, 199, 659 S.E.2d 196, 204 (Ct.App.2008), *quoting Sims v. Giles*, 343 S.C. 708, 716–17, 541 S.E.2d 857, 862 (Ct.App. 2001).

Gilbert contends that Lane was not an invitee because he had no consent, either express or implied, to be in the courtyard and because his presence in the courtyard was not to the interest or advantage of Gilbert. We find that there was at least implied consent to use the area since it was immediately outside of an emergency exit. Moreover, Lane was at least partly benefiting Gilbert by attempting to have the switchboard disable the automatic alert to the fire department. Lane testified that the fire alarm repeatedly sounded during his shift. Each time the alarm sounded, the alarm system automatically notified the fire department. By instructing the switchboard to place the system in "test" mode, Lane could ensure that the business of both the Hospital and Gilbert would not be repeatedly interrupted by the sounding of the alarm, unnecessary evacuations, and arrival of fire department personnel.

■ Moreover, even if Lane did not provide a benefit to Gilbert, Gilbert would not be entitled to a directed verdict if Lane were classified as a licensee.

■ "A licensee is a person who is privileged to enter upon land by virtue of the possessor's consent." *Neil v. Byrum*, 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986). "When a licensee enters onto the property of another, the primary

benefit is to the licensee, not the property owner." *Singleton,* 377 S.C. at 198, 659 S.E.2d at 203.

■ "A landowner owes a licensee a duty to use reasonable care to discover the licensee, to conduct activities on the land so as not to harm the licensee, and to warn the licensee of any concealed dangerous conditions or activities." *Singleton,* 377 S.C. at 201, 659 S.E.2d at 204. In our view, the evidence presented at trial raised a jury question as to whether or not Gilbert met the duty owed to Lane as a licensee. Therefore, even assuming Lane was a licensee, the trial judge did not err in denying the motion for a directed verdict. *See Ecclesiastes Production Ministries, supra.*

We find that the trial court properly classified Lane as an invitee. Moreover, even assuming Lane is not an invitee, Gilbert would not be entitled to a directed verdict. Consequently, the trial judge did not err in denying Gilbert's motion for a directed verdict.

## II. Did the trial court err in granting a new trial?

Gilbert argues that the trial court erred in granting Lane a new trial. We disagree.

■ In South Carolina, a trial judge may grant a new trial following a jury verdict under the Thirteenth Juror Doctrine. The doctrine "entitles the judge to sit, in essence, as the thirteenth juror when he finds 'the evidence does not justify the verdict,' and then to grant a new trial based solely 'upon the facts.'" *Norton v. Norfolk Southern Railway Co.,* 350 S.C. 473, 478, 567 S.E.2d 851, 854 (2002), *citing Folkens v. Hunt,* 300 S.C. 251, 387 S.E.2d 265 (1990). As the thirteenth juror, the trial judge can hang the jury by refusing to agree to the jury's otherwise unanimous verdict. *Id.*

■ Upon review, a trial judge's order granting or denying a new trial will be upheld unless the order is wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law. *Norton,* 350 S.C. at 478, 567 S.E.2d at 854. This Court's review is limited to consideration of whether evidence exists to support the trial court's order. *Id.* at 478–79, 567 S.E.2d at 854. As long as there is conflict-

ing evidence, this Court has held the trial judge's grant of a new trial will not be disturbed. *Id.*

The judge is not required to explain the reasons for his decision. *Id.* In this case, however, the trial judge provided an explanation in the order granting the motion for a new trial. The court noted that Lane presented evidence at trial, which was "uncontested by the defendant," of actual medical costs of $73,754, lost wages from the date of injury up until the time of trial of $17,248, and a 21% permanent impairment rating. The court also noted that the jury heard testimony from two experts opining that Lane suffered a loss of personal services to his family equivalent to $19,381, such as household chores, and is unable to perform the duties required by his prior job as an HVAC mechanic. The court concluded:

> [A]fter careful review of all of the facts and circumstances of this case and other cases in the state of South Carolina, this Court believes that an amount of Seventy Five Thousand and no/100 ($75,000.00) Dollars can only be explained on the basis of passion, prejudice or caprice on the part of the jury. The jury's verdict in this case shocks the conscience of this Court, as an award of damages, particularly the considerations, or lack thereof, of the uncontested damages presented by the Plaintiff, including a Twenty–One (21%) percent permanent impairment to health. As such, this Court finds that the jury's verdict in this matter is grossly inadequate in light of the evidence presented.

The trial judge then granted Lane's motion for a new trial absolute.

## A. Did the trial court commit legal error in viewing certain damages as "uncontested?"

Gilbert first argues that it was legal error for the trial judge to base his order on the idea that certain damages were "uncontested." Gilbert contends that it *"did contest* those damages, denying them in its Answer, by not stipulating as to damages and by questioning Lane's claims in cross-examining various witnesses about them." In Gilbert's view, the trial court's Order implied that Gilbert was required to put up witnesses to contest the claim of damages and thereby shifted the burden of proof from the plaintiff to the defendant. We disagree.

██ In considering a motion for a new trial, the trial judge must look to see if the evidence justifies the jury verdict. *See Norton,* 350 S.C. at 478, 567 S.E.2d at 854. The court, in making such an inquiry, is perfectly justified in noting whether the evidence presented to the jury was or was not challenged in front of the jury.

Moreover, the trial judge's statement that certain evidence was "uncontested" was not factually incorrect, since the evidence in question was not challenged by Gilbert at trial, even on cross-examination. Gilbert's counsel told the jury in his opening statement:

> We are not contesting that he was injured. We are not going to challenge those areas about his life. He was injured. He has undergone a lot of medical treatment. But, there is one part of his damages that we are going to talk about. We do take exception to the future los[t] wages that you are going to hear.

As promised, Gilbert did not challenge the medical costs, lost wages prior to trial, or physical impairment rating. Instead, Gilbert chose to focus on disputing Lane's claims for future lost wages, and succeeded as the jury awarded $0 for that particular claim.

The trial court committed no error in noting that certain damages were "uncontested" in its order granting a new trial.

### B. Is there evidence to support the trial court's order?

██ Gilbert contends that the trial court erred in granting a new trial because there is no evidence to support the order. We disagree.

On a special verdict form, the jury awarded $75,000 in actual damages of which it attributed $0 to future diminished earning capacity. Gilbert argues that the jury properly declined to award earning capacity since, at the time of trial, Lane was employed in a job that paid better than his previous job. Gilbert also posits reasons why the jury might choose to reduce the awards for pre-trial personal services, pain and suffering, and medical bills.[1]

---

1. Gilbert contends that the jury may have reduced the amount of damages based on medical bills because (1) though the bills were

Gilbert's points are not entirely without merit. However, the question before this Court on appeal is whether the trial court's decision to grant a new trial is wholly unsupported by the evidence. *See Norton*, 350 S.C. at 478, 567 S.E.2d at 854. In the instant case, Lane presented evidence of $73,754 in medical bills and $17,248 in lost wages up to the time of trial, neither of which was challenged by Gilbert. Lane also presented evidence that Lane has a 21% physical impairment, experienced pain and suffering related to the accident, and suffered a loss of personal services to his family of $19,381. We find the trial court's decision order granting a new trial is supported by the evidence.

### III. Was Gilbert denied its right to a trial by jury?

Gilbert contends that to grant a new trial after the jury verdict was "*de facto* to deny Gilbert its constitutional right to trial by jury." In short, Gilbert contends that the Thirteenth Juror Doctrine is unconstitutional under the South Carolina constitution. We disagree.

The Thirteenth Juror Doctrine is a well-established in South Carolina as the standard for granting a new trial. *See Norton*, 350 S.C. at 477, 567 S.E.2d at 854. This Court has reviewed the doctrine on several occasions and has refused to abolish it. *Id.* at 478, 567 S.E.2d at 854.

The right to trial by jury is a fundamental right. *See Wright v. Colleton County School Dist.*, 301 S.C. 282, 291, 391 S.E.2d 564, 570 (1990). As such, any abridgement of that right is subject to strict scrutiny. *See City of Beaufort v. Holcombe*, 369 S.C. 643, 632 S.E.2d 894 (Ct.App.2006). To meet strict scrutiny, a law or policy must meet a compelling state interest and be narrowly tailored to effectuate that interest. *See In re Treatment and Care of Luckabaugh*, 351 S.C. 122, 140–41, 568 S.E.2d 338, 347 (2002).

The Thirteenth Juror Doctrine does not abridge the right to a trial by jury since the effect of a trial judge's decision to

---

introduced, there was no testimony that they had been paid, and (2) the jury could have reasonably concluded from Lane's answer that the summary of medical expenses was correct "to my knowledge" that Lane did not know how much he had been billed, or actually paid for medical expenses.

grant a new trial is to allow another jury trial. Therefore, the parties are not deprived of a trial by jury.

We affirm the trial court's exercise of power under the Thirteenth Juror Doctrine.

## CONCLUSION

The trial court did not err in declining to grant a directed verdict for Gilbert based on Lane's status for purposes of premises liability. Furthermore, the trial court did not err in granting a new trial under the Thirteenth Juror Doctrine, nor is the doctrine unconstitutional. Therefore, the decision of the trial court is

**AFFIRMED.**

WALLER, BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.